COMMONWEALTH *vs.* RICHARD A. WHITE.

Essex.   October 2, 1967. — December 14, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Homicide. Pleading, Criminal*, Bill of particulars. *Practice, Criminal*, Assistance of counsel, Charge to jury, Capital case. *Evidence*, Admissions and confessions, Of identity, Other offence, Stated ground of objection. *Constitutional Law*, Admissions and confessions, Assistance of counsel.

There was on the record in a murder case no abuse of discretion in refusing to compel the Commonwealth to specify in a bill of particulars the "crime, if any, in the commission or attempted commission of which the murder . . . is alleged to have been committed." [412–413]

Evidence in a murder case that the defendant, armed with a loaded pistol, went to a restaurant late at night, intending to "rob the place," and that the proprietor of the restaurant was found outside it shot to death the following morning warranted a verdict of murder in the first degree or of any of the lesser included offences. [413–414]

In a criminal case in which two successive confessions made by the defendant to police officers while in custody were suppressed by reason of failure to comply with one of the requirements laid down by *Miranda v. Arizona*, 384 U. S. 436, a like failure with respect to *Miranda* did not require suppression or exclusion from evidence of a third confession made by the defendant to two friends, one of whom knew of the earlier confessions, while they were visiting him at a penal institution, where it was found by a judge that the friends were not agents of the police, that the third confession was not the product of any scheme on the part of the police, and that the police merely facilitated the friends' visit after the defendant himself had requested the visit; it could not be said as matter of law that the third confession was inseparable from and the fruit of the earlier confessions. [416–417]

Where the first two of three confessions by the defendant in a criminal case were suppressed on his motion, he could not successfully attack the third confession on the ground that the jury could not pass on its voluntariness without knowing what he had said in the earlier confessions. [417–418]

The judge at a criminal trial, upon finding after a voir dire that a confession by the defendant was voluntary, properly made a statement to the jury of that finding accompanied by an instruction that the finding was not binding on them and that it was exclusively for them to decide the issue of voluntariness. [418]

At the trial of an indictment for murder committed by shooting, an empty cartridge casing adequately identified as one fired from a pistol

stolen, with some ammunition, from its owner was properly admitted in evidence where there was expert testimony that such casing and a casing found at the scene of the killing were fired in the same pistol. [419]

Relevant evidence in a criminal case that an automobile, found after the crime with the defendant's fingerprints on it and papers in his handwriting in it tending to connect him with the crime, had been stolen from its owner was not rendered inadmissible in that such evidence also might suggest to the jury involvement of the defendant in a prior crime. [420]

It was not open to the defendant in a criminal case to attack in this court an evidential ruling by the trial judge on grounds not brought to the judge's attention. [421]

Certain instructions to the jury on manslaughter at the trial of an indictment for murder by shooting were adequate. [422]

Where there was no error at a criminal trial in the admission in evidence of a confession by the defendant, certain standards for determining harmless error with respect to the confession were irrelevant. [423]

A portion of the charge to the jury in a criminal case in which the judge merely pointed out possible conclusions warranted by the evidence, without indicating his own conclusions, did not amount to a charge on the facts. [423]

Where it appeared in a murder case that there was evidence that the defendant, armed with a loaded pistol, went to a restaurant late at night and shot the proprietor outside the restaurant, and further evidence both that the defendant's purpose was to rob the proprietor and that it was merely to break and enter, that the judge charged the jury that the killing was murder in the first degree if it occurred during a robbery and was murder in the second degree if it occurred during a breaking and entering, but failed to instruct the jury as to what constituted robbery and breaking and entering, respectively, and that there was a verdict of guilty of murder in the first degree with a recommendation that the death penalty be not imposed, it was held that the omission from the charge was prejudicial to the defendant and that, to prevent a possible miscarriage of justice, entry of a verdict of murder in the second degree should be ordered under G. L. c. 278, § 33E, as amended by St. 1962, c. 453. [425–426]

INDICTMENT found and returned in the Superior Court on May 11, 1966.

A motion by the defendant for a further particular and motions to suppress were heard by *Good*, J., and the case was tried before him.

*John A. McNiff* for the defendant.

*John J. Jennings*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.   The defendant, Richard A. White, was in ·

dicted for the murder of Clifford A. Crawford. The indictment charged murder in the first degree. The jury returned a verdict of guilty and recommended that the death sentence be not imposed. G. L. c. 265, § 2. The case, having been tried subject to G. L. c. 278, §§ 33A–33G, comes here on White's appeal.

We summarize the pertinent evidence as follows: On Sunday, December 5, 1965, about 6:30 A.M. Clifford Crawford was found dead outside Vi-Cliff's Restaurant in Danvers. The cause of death was a bullet wound in the chest. Crawford operated the restaurant and was last seen there about 12:30 A.M., December 5, shortly after closing time. He was next seen lying on the ground on his back with a cocked Beretta ₅380 semiautomatic pistol near his right hand. The police found no fingerprints on the gun and never succeeded in determining its origin or ownership. Near Crawford was a set of car keys.

Two expended cartridge casings were found at the scene. One, a Remington .380 casing, was found seven feet five inches in front of Crawford's car at a point seven feet from the restaurant. This casing was ejected from the Beretta gun found near Crawford's hand. The other casing, a Western .380, was found three feet eleven inches from the bottom of the side stairs of the building and six feet four inches behind Crawford's car. There was evidence tending to show that this casing had been ejected from a gun stolen from the home of John J. Reardon, Jr., of Salem. A spent bullet, on which there was blood, was found inside Crawford's car and the markings on it were consistent with those made by a Browning pistol, which was the type stolen from Reardon along with some Western .380 ammunition.

On Monday, December 6, 1965, Lieutenant McNulty of the Massachusetts State Police received information that a Corvette automobile had been found in Mount Sterling, Ohio. The car had been stolen from Mark Godfried of Peabody on the first or second day of December. As a result of this and other information McNulty had the defendant's fingerprint card forwarded to Ohio. The defendant's finger-

prints were found on the stolen car; there were also found in the car three letters and a postcard which were identified as being in the handwriting of the defendant. On one letter in the defendant's hand, the following words appeared: "rubber gloves, wire and clips, screw driver, pliers, sweat shirt, knife, handkerchief, Vi-Cliff's, Agawam, China Sails, and Anthony's Hawthorne."

At the time of the killing the defendant was an escapee from the Massachusetts Correctional Institution at Concord, and had been such since October 20, 1965. He was arrested in Chicago on April 11, 1966, on a Federal fugitive warrant based upon the escape. On April 14 the Federal charge was dismissed, and the defendant waived hearing on the rendition proceedings and agreed to return to this Commonwealth voluntarily. On the same day he was interviewed by three Massachusetts police officers, as a result of which he gave a detailed account of the shooting of Crawford. Upon his return to Massachusetts the defendant was incarcerated temporarily in the House of Correction in Billerica. He was visited there by Officers McNulty and Noonan on April 17 at which time he furnished them with additional information concerning the shooting. At that visit an arrangement was made whereby the defendant's friends Thomas Beaulieu and his son Thomas (hereinafter sometimes called Beaulieu, Sr., and Beaulieu, Jr.) would visit him in Concord. Accordingly, the Beaulieus visited the defendant on April 23 at the Concord Reformatory to which he had been transferred. During this visit the defendant told them that he had "nailed" Crawford at Vi-Cliff's and gave an account of the shooting.

### MOTION FOR PARTICULARS.

1. The defendant moved for and was furnished particulars as to the time and place of the alleged offence, and the manner and means in and by which it was committed. The Commonwealth declined to specify as requested by the defendant the "crime, if any, in the commission or attempted

commission of which the murder of Clifford A. Crawford is alleged to have been committed." To the refusal of the court to order this specification, the defendant excepted. (Assignment of error No. 1.) There was no error. "The purpose of a bill of particulars is 'to describe in more detail that which is included in the allegations of an indictment in order that the defendant may be fully informed of the nature of the charge and be enabled to prepare an adequate defence.'" *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 222. The indictment along with the particulars furnished by the Commonwealth gave the defendant "reasonable knowledge of the nature and grounds of the crime charged"; it cannot therefore be said that the charge was not "fully, plainly, substantially and formally set out." G. L. c. 277, § 40. In such circumstances the ordering of further specifications rested in the discretion of the judge. *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 747.

## MOTIONS FOR DIRECTED VERDICTS.

2. At the close of the Commonwealth's evidence the defendant presented four motions for not guilty verdicts with respect to the offence charged in the indictment and the lesser included offences. Similar motions were presented at the close of all the evidence. All motions were denied subject to the defendant's exceptions. (Assignments of error Nos. 13 and 14.)

In view of what we shall say later in part 7 of this opinion we think that the judge rightly submitted the issue of first degree murder to the jury. And clearly there was enough evidence to warrant a verdict of murder in the second degree or a verdict of any of the lesser included offences. There was evidence that the defendant went to the scene of the crime late at night carrying a loaded pistol. It could have been inferred that he was embarked on a criminal enterprise involving at the very least breaking and entering, or larceny, or both. In the defendant's own words (according to Beaulieu, Sr.) he went to Vi-Cliff's to "rob the place."

Thus it could have been found that the defendant shot and killed Crawford in the commission or attempted commission of a felony. A homicide committed in the commission or attempted commission of a felony is murder at common law. *Commonwealth* v. *Chance,* 174 Mass. 245, 252. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 310, 315. *Commonwealth* v. *Green,* 302 Mass. 547, 556. The defendant does not argue that the evidence would not support a verdict of manslaughter. See *Commonwealth* v. *Bouvier,* 316 Mass. 489. On the contrary the defendant urges that it would.

## THE CONFESSIONS.

3. Three confessions are involved in this case. The first was made in Chicago to Officers McNulty, Joyce and Noonan on April 14, 1966. The second occurred on April 17 while the defendant was at the House of Correction at Billerica and was made to Officers McNulty and Noonan. The third was made to the defendant's friends, the Beaulieus, at Concord on April 23, 1966.

The defendant moved to suppress all three confessions. His motions were allowed with respect to the first two, but his motion with respect to the third was denied. (Assignment Nos. 2, 8, 10 and 11.) It is with this confession that we are concerned. But to a proper understanding of the questions presented, something should be said about the earlier confessions. Concerning the first (Chicago) confession the judge made careful and detailed findings of fact. He found that during the interrogation in Chicago the defendant was informed that he had a "right to contact a family friend or a lawyer . . . [and] to use the telephone; that he did not have to talk . . . if he did not want to; that anything he . . . [said] could be used against him; [and] that he had a right to have a lawyer present . . . if he wanted one." He was further asked if he was "aware of . . . [his] rights" and he said that he was. Since the case of *Miranda* v. *Arizona,* 384 U. S. 436, was not decided until June 13, 1966, the warnings given to the defendant on

April 14, 1966, were sufficient to satisfy the then existing standards. The judge suppressed the confession because the requirements laid down in the *Miranda* case were not satisfied.[1] The warning was found to be defective because the police failed to inform the defendant "that if he were indigent, a court appointed lawyer would be appointed forthwith and prior to any interrogation." Although no findings were made in connection with the suppression of the second (Billerica) confession, we have no doubt that it was done for the same reason.

The defendant attacks the third (Concord) confession on the ground that it was in substance a continuation of the Chicago and Billerica confessions and was really conducted by the police through the agency of the Beaulieus. Thus, it is argued, the infirmity of the earlier confessions attaches to the Concord confession and renders it inadmissible. Accordingly, it is urged, the judge should have allowed the motion to suppress. Closely related to this argument is the contention that it was error to admit the police testimony as to a conversation with the defendant at Billerica as to matters preceding the Beaulieus' visit. And finally the defendant argues that the judge erred in admitting the defendant's confession to the Beaulieus. These questions are the subject of assignments of error Nos. 2, 8, 10 and 11.

Had the Concord confession been made to the police or their agents, it doubtless would have been inadmissible because of failure to give the requisite warning. This result flows from the language in the *Miranda* case proscribing the use of statements by the prosecution stemming from custodial interrogation where the procedural safeguards against self-incrimination have not been observed. Custodial interrogation was defined as "questioning initiated by law

[1] *Johnson* v. *New Jersey*, 384 U. S. 719, held that the *Miranda* rules were applicable only to cases where the *trials* commenced after June 13, 1966, the date of the *Miranda* decision. Here the trial took place after that date. Compare, however, *Stovall* v. *Denno*, 388 U. S. 293, holding that the doctrine of *United States* v. *Wade*, 388 U. S. 218 (requirement of counsel at lineup identification) did not apply to *identifications* made prior to the date of the *Wade* decision. In other words, the time of the identification rather than the time of the trial is the determining factor.

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U. S. 436, 444.

The judge fully considered the degree of police involvement on both the pre-trial motion to suppress and the voir dire hearing preceding the admission of the confession at the trial. With respect to the motion the judge made detailed findings. The two Beaulieus were examined at great length and both denied that there was any plan to induce the defendant to make a third confession. The evidence warranted the findings of the judge that the Beaulieus made no bargain with the police to help make a case against the defendant; that they went to visit the defendant out of their feeling of concern for him; and that the police did no more than facilitate a visit which was initiated by the defendant himself. On the basis of these findings the judge rightly ruled that the standards of custodial interrogation which vitiated the Chicago and Billerica confessions did not apply to the Concord confession.

If the Beaulieus were not agents of the police and if the Concord confession was not the product of some scheme on the part of the police to obtain a further confession, it remains to consider whether the fact that Beaulieu, Sr. went to Concord with the knowledge that the defendant had already confessed to the police, that he was likely to do so again, and that he (Beaulieu) might have to give testimony concerning it, brings the case within the *Miranda* rules. We are not disposed to hold that because a person has made one or more confessions which fail to satisfy the *Miranda* standards nothing that he may thereafter say, even in circumstances where the *Miranda* principles do not apply, can ever be received in evidence. Whether the subsequent confession was likewise tainted would depend on the circumstances in which it was obtained.

The defendant further argues that the compelling influences which invalidated the Chicago and Billerica confessions extended to the Concord confession and that all three interviews were a part of one custodial interrogation

and cannot be separated. In support of this contention the defendant cites *Clewis* v. *Texas*, 386 U. S. 707. There it was he'd on facts very different from those here that a series of confessions to the police could not be separated, and all were tainted. No such conclusion was required with respect to the three confessions here. Rather than any automatic presumption of illegality in the case of consecutive confessions where an earlier confession is invalid, the test is whether the later confession is voluntary. As was said in *Lyons* v. *Oklahoma*, 322 U. S. 596, 603, "The Fourteenth Amendment does not protect one who has admitted his guilt because of forbidden inducements against the use at trial of his subsequent confessions under all possible circumstances. The admissibility of the later confession depends upon the same test — is it voluntary. Of course the fact that the earlier statement was obtained from the prisoner by coercion is to be considered in appraising the character of the later confession. The effect of earlier abuse may be so clear as to forbid any other inference than that it dominated the mind of the accused to such an extent that the later confession is involuntary. If the relation between the earlier and later confession is not so close that one must say the facts of one control the character of the other, the inference is one for the triers of fact and their conclusion, in such an uncertain situation, that the confession should be admitted as voluntary, cannot be a denial of due process." See *United States* v. *Bayer*, 331 U. S. 532, 540–541.

Here there is no suggestion that the earlier confessions were elicited by threats or promises. The judge, as stated, excluded these confessions because as required by the *Miranda* case (which was decided subsequent to the confessions but prior to trial) the defendant was not told he had a right to a court appointed attorney *during the interrogation*. It cannot be said as matter of law that the third confession was the fruit of the others.

The defendant further argues that in the circumstances it was impossible for the jury to pass upon the voluntariness

of the Concord confession without considering what he had said at Chicago and Billerica. Under the Massachusetts practice the question of voluntariness is first decided at a preliminary hearing before the judge in the absence of the jury. Once satisfied as to its voluntariness, the judge admits the confession. The jury then must also be satisfied that it was voluntary. *Commonwealth* v. *Marshall*, 338 Mass. 460, 461–462. See *Jackson* v. *Denno*, 378 U. S. 368, 378.

The judge instructed the jury at some length on this issue of voluntariness. Inasmuch as the Chicago and Billerica confessions were suppressed, it would have been improper for him to suggest to the jury that they consider whether the Concord confession was the product of the earlier confessions. The defendant was confronted with a dilemma rather than an impossibility; had he wished to amplify his contention of involuntariness he could have laid before the jury the earlier confessions and argued their influence. Concluding, apparently, that this might do him more harm than good, he decided to attack the third confession without mentioning the earlier confessions. The earlier confessions were suppressed at the defendant's instigation. Once they were out of the case they were out for all purposes. The defendant could not have it both ways.

The defendant also complains that the judge erred in informing the jury after the voir dire hearing of his preliminary determination that the confession was voluntary. It is plain from an examination of the transcript that the defendant's objection and exception were to the judge's ruling admitting the confession and not to the communication of his finding to the jury. But if we were to view the exception as raising the latter point it is without merit. "Where the law requires a judge to make a preliminary finding of facts it is proper for him to state his finding to the jury." *Commonwealth* v. *Cantor*, 253 Mass. 509, 512, and cases cited. The judge instructed the jury that his preliminary finding was not binding on them and that it was exclusively for them to decide whether the confession was voluntary.

The defendant urges that the testimony of Lieutenant McNulty as to how the visit of the Beaulieus to Concord came about was improperly admitted. The defendant has not shown how this testimony was prejudicial and we do not see how it was. McNulty did no more than explain briefly that he arranged the visit after having talked with the defendant at Billerica. This testimony was relevant to the jury's determination of whether the police or the defendant initiated the visit, and, thus, to the propriety of the confession. See *Commonwealth* v. *Durkin*, 257 Mass. 426, 428. As stated above the Concord confession could have been found to be sufficiently separated from the Chicago and Billerica confessions as not to be tainted by them. And likewise the conversation at Billerica concerning the Beaulieus' visits cannot be said to be the product of the earlier confessions.

## MISCELLANEOUS QUESTIONS OF EVIDENCE.

4. The defendant's third, fourth and fifth assignments of error relate to an empty cartridge case which was introduced as exhibit 40. John J. Reardon, Jr., from whose home a Browning pistol and some Western ammunition had been stolen on November 14, 1965, was called as a witness by the Commonwealth. About December 9 he turned over to Lieutenant Patruska of the Peabody police an empty cartridge casing which had been fired in his Browning pistol. Patruska put it in an envelope which he marked, signed and sealed before handing it to Lieutenant Kelleher of the State police. Kelleher in turn handed it to Trooper Walsh of the ballistics department of the State Police who identified it as the shell that he had received. There was expert testimony that exhibit 40 and a cartridge casing found at the scene of the killing were fired by the same gun. If the casing was adequately identified, a complete chain of custody was established. We are of opinion that the identification was sufficiently established to justify its admission in evidence. If there were weaknesses in the chain, that would

go to the weight of the evidence rather than to its admissibility. *Commonwealth* v. *Parrotta*, 316 Mass. 307, 313. *Commonwealth* v. *Vanetzian*, 350 Mass. 491, 496.

When Reardon was asked to identify the shell he replied, "It's made by the same company and it's the same caliber." Inasmuch as the actual question asked was whether or not the shell appeared to be similar to that which he had turned over to Officer Patruska, this answer was not unresponsive, but was somewhat more detailed than a simple yes. The judge did not err in refusing to strike this answer.

5. The defendant's sixth assignment of error relates to testimony that the Corvette automobile found in Mount Sterling, Ohio, had been stolen from Mark Godfried of Peabody. The defendant argues that this evidence served only to suggest to the jury that he had been involved in prior criminal activity. This evidence was competent to prove the commission of the crime charged. The defendant's fingerprints on the car tended to show that he drove it, and the writing found in the car in the defendant's hand containing a list of places, including Vi-Cliff's, tended to connect him with the shooting. Evidence otherwise relevant to the offence charged is not rendered inadmissible because it also tends to prove the commission of some other crime. *Commonwealth* v. *Choate*, 105 Mass. 451, 457–458. *Commonwealth* v. *Scott*, 123 Mass. 222, 235. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314.

6. Three other assignments (7, 9 and 12) relating to evidence hardly merit discussion. There was no error with respect to the word "speculation" used by Lieutenant McNulty in his testimony. This was put into his mouth by the defendant on cross-examination. Nor was there any error in the judge's ruling that Beaulieu, Sr., when called by the defendant, was not a hostile witness. Plainly the judge justifiably found that he was not and hostility was the only ground put forward to justify what was in effect cross-examination. The defendant in this court attacks the ruling on a ground never mentioned to the judge, namely,

that he was entitled to show a prior inconsistent statement under G. L. c. 233, § 23. He also urges here a ground not pressed at the trial that the witness was not really his because he had been called earlier by the Commonwealth. It is not open to the defendant to urge grounds in this court that were never called to the attention of the trial judge. *Brown* v. *Brown*, 208 Mass. 290, 292. *Rothwell* v. *First Natl. Bank*, 286 Mass. 417, 422. The questions put to Beaulieu, Sr., as a witness for the Commonwealth by the prosecutor on matters which had already been explored were hardly leading but even if they were they would not be grounds for reversal. *Guiffre* v. *Carapezza*, 298 Mass. 458, 460.

## THE CHARGE.

7. The defendant excepted to the judge's refusal to give a series of instructions requested by him to the effect that there was insufficient evidence for the jury to find that the defendant was engaged in either robbery or attempted robbery (assignment No. 15), or that the killing was done in the commission or attempted commission of a crime punishable with death or life imprisonment (assignment Nos. 17 and 18), or that the murder was committed with deliberately premeditated malice aforethought (assignment No. 16). There was no error in refusing to give these instructions because the evidence, in particular the defendant's confession to the Beaulieus, permitted a finding that he went to Vi-Cliff's, armed with a gun, and that either in the course of the commission or attempted commission of robbery or with premeditation, shot and killed Crawford. According to Beaulieu, Sr., the defendant in his Concord confession stated that he "went . . . [to Vi-Cliff's] to rob the place, and . . . at the window . . . [he] noticed somebody sitting in there . . . [and he] didn't know whether to wait him out or just leave."[2] The defendant chose the former

---

[2] The testimony of Beaulieu, Jr., was to the same effect except that he stated that the defendant went to Vi-Cliff's for the purpose of breaking and entering.

course and shortly thereafter Crawford came out and began to shoot and the defendant shot back.

It is contended that the instructions relating to manslaughter were defective (assignment Nos. 19 and 21). Careful examination of the judge's charge on manslaughter reveals no error. The instructions in no way assume that it was established that the defendant had been engaged in robbery or breaking and entering at the time of the homicide. The defendant's argument that the judge instructed the jury that a verdict of manslaughter could be returned only if they found that the defendant had discontinued the robbery or breaking and entering is misleading, for the argument looks at only one portion of the charge. The charge as a whole was ample and dealt with mitigating circumstances and defences argued by the defendant in this court (requests Nos. 19, 20, 21, 22 and 23).

The defendant contends that it was error to deny requested instructions Nos. 24 and 28 (assignment No. 20). Request No. 24 relates to the voluntariness of the confession to the Beaulieus. The judge stated that if the Beaulieus' visit was part of "an operation . . . by the police to use devious means to get . . . [the defendant] to make a statement to his best friends who were working for the police," the confession could not stand. This was substantially in accordance with the defendant's request. There was no error.

The defendant's twenty-eighth request was: "The Commonwealth has the burden of proof in proving beyond a reasonable doubt concerning the defendant's inculpatory statement or statements at Concord on April 23, 1966, that the Commonwealth is not the beneficiary of any incriminating evidence obtained from the defendant without a free and voluntary choice by the defendant between silence and confession. *Chapman* v. *California*," 386 U. S. 18. It is not clear how the *Chapman* case is applicable. There it was held that where Federal constitutional error occurred (in that case extensive comments by the prosecution on the defendants' failure to testify) the burden was on the prose-

cution to show that there was no harm: "[E]rror . . . in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal . . . . [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U. S. 18, 24. In the *Chapman* case Federal constitutional error was conceded. Here there was no error.[3] We have considered above at some length the propriety of admitting the Concord confession to the Beaulieus. As there was no error in admitting the confession in evidence, the Federal standards required by the *Chapman* case for determining the harmlessness of trial error have no relevance.

The defendant excepted to the statement of the judge to the effect that if the jury found that the Beaulieus' visit was initiated by the defendant's own request and was not part of a scheme of the police, they should bear in mind that any friend of the defendant who acquired information would have an obligation to coöperate with the police in their investigation and that it would be normal procedure for the police to communicate with the Beaulieus upon learning that they had talked with the defendant (assignment Nos. 22 and 23). We cannot agree with the defendant that this amounted to à charge on the facts and was prejudicial. This portion of the charge amounted to nothing more than putting to the jury the possible conclusions warranted by the evidence. The judge did not convey to the jury his own conclusions. On the contrary, he emphasized repeatedly, in clear and emphatic language, that the jury were the finders of fact. It was not inappropriate for him to point out that

---

[3] If the defendant's contention is that the Commonwealth must prove at the trial that the confession was admissible beyond a reasonable doubt, that is not the law. *Commonwealth* v. *Polian*, 288 Mass. 494, 498–499. See *Clewis* v. *Texas*, 386 U. S. 707; *United States* v. *Bayer*, 331 U. S. 532; *Lyons* v. *Oklahoma*, 322 U. S. 596.

if the jury found that the visit to Concord was initiated by the defendant, any friends of his would have an obligation to coöperate with the police. See dissenting opinion of White, J., in *Massiah* v. *United States,* 377 U. S. 201, 211–212.

The defendant's final argument goes to the felony murder aspect of the case. The instructions, as the defendant argues, omitted any definition of robbery and breaking and entering. One theory put forward by the Commonwealth was that the defendant shot Crawford while in the commission, or attempted commission, of an armed robbery. Evidence was presented to the jury consistent with the theories that the defendant went armed with a gun to Vi-Cliff's to rob Crawford or to wait until Crawford had left and then to force open the safe, or that the defendant killed Crawford with premeditation.

The choice between robbery and breaking and entering has important consequences for the defendant inasmuch as breaking and entering is not a crime punishable by death or life imprisonment, whereas armed robbery is so punishable. See G. L. c. 265, § 17, and c. 266, § 16. Had the jury found that the killing occurred during the commission of the crime of breaking and entering, a verdict of no more than murder in the second degree would have been warranted.

The defendant took no exception to the judge's failure to give the definitions in question. Irrespective of this omission, G. L. c. 278, § 33E, requires that this court consider the whole case broadly to determine whether there was any miscarriage of justice. *Commonwealth* v. *Bellino,* 320 Mass. 635. *Commonwealth* v. *Cox,* 327 Mass. 609. *Commonwealth* v. *Baker,* 346 Mass. 107.

The judge's instructions were correct as a general statement of the felony murder doctrine in Massachusetts. In reading and paraphrasing the statutory definition of murder, the judge first instructed the jury that murder committed in the commission or attempted commission of a crime punishable with death or imprisonment for life is murder in the first degree. He then told them that if they believed

Beaulieu, Sr., that the defendant went to Vi-Cliff's to commit robbery, there would be sufficient evidence for the jury to return a verdict of murder in the first degree.

After the jury had retired, they returned to request "a clarification of second degree murder" and in substance the judge repeated his instructions. The jury were told that if the defendant was engaged in robbery, which is punishable by life imprisonment, the verdict should be murder in the first degree, whereas if he were engaged in the act of breaking and entering, which is not punishable by life imprisonment, it would be second degree murder. This is the only place in the instructions that the distinction between robbery and breaking and entering is made. The distinction, as enunciated, is defective in failing to define the respective elements of robbery and breaking and entering. Given the jury's apparent confusion as to what constitutes murder in the second degree, the judge's amplification, in what was otherwise an excellent charge, fell short of providing a comprehensible standard to guide them. The defendant's fate thus turned on a layman's definition of robbery and breaking and entering. These are technical matters with which laymen cannot be expected to be familiar. See e.g. *Commonwealth* v. *Novicki*, 324 Mass. 461.

The evidence submitted to the jury consisted primarily of (1) a piece of paper with "Vi-Cliff's" written upon it in the defendant's handwriting found in Godfried's car, (2) the description of the scene of the killing, (3) Beaulieu, Sr.'s testimony that the defendant went to Vi-Cliff's to "rob the place," and (4) Beaulieu, Jr.'s statement that the defendant went to "break and enter." Given the ambiguity of this evidence, it was particularly important that the jury be able to distinguish robbery from breaking and entering.

Prejudice to the defendant seems inescapable. The jury could have found first degree murder on the basis of either premeditation or the felony murder theory. The evidence of premeditation was slight. It consisted essentially in the fact that White went to Vi-Cliff's with a loaded gun, bent upon theft, and that Clifford Crawford was found shot

through the chest.   Given the tenuous nature of this evidence, it is a very real possibility that the jury attached great weight to the felony murder instructions and that because of the absence of adequate definitions were misled in assessing the degree of the defendant's guilt.

The jury *could* have found either first or second degree murder.   There is a strong possibility that in finding first degree murder the jury were relying on only their own notions of what constitutes robbery and breaking and entering.   The evidence of intended robbery (which involves force or violence to the victim or putting him in fear) as distinguished from intended breaking and entering was ambiguous.   In the circumstances, to prevent a possible miscarriage of justice, we direct the entry of a verdict of murder in the second degree, a power conferred on this court by St. 1962, c. 453, which amended G. L. c. 278, § 33E.[4]   This amendment was first discussed and applied in *Commonwealth* v. *Baker*, 346 Mass. 107.

8. The case is remanded to the Superior Court for the entry of a verdict of guilty of murder in the second degree and for the imposition of sentence.

*So ordered.*

─────────

[4] It might seem at first blush that there is no difference between a first degree conviction with a recommendation that the death penalty be not imposed and a second degree conviction, since in both situations a life sentence is mandatory. But there is a substantial difference, for in the case of one serving a life sentence for murder in the first degree he is not eligible for parole. G. L. c. 265, § 2.