JOHN ELLIS SMITH *v.* STATE OF INDIANA.

[No. 2-474A81. Filed August 7, 1975.]

*Jack Quirk,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—John Ellis Smith (Appellant) appeals from a judgment convicting him of Armed Robbery, claiming error in the admission of certain exhibits and the unconstitutionality of the Armed Robbery Statute.

## FACTS

The facts and evidence most favorable to the State are as follows:

On the 8th day of June, 1972, Smith entered the El-Raye Beauty Salon located on State Highway 32 near Muncie, Indiana. Present in the beauty salon were the proprietor, two attendants and two customers.

Smith asked for a person named "Hayes" and, being informed there was no one there by that name, he looked around the salon and appeared about to leave when he drew a gun and announced, "This is a hold-up". The salon proprietor was ordered to open the cash register from which Smith withdrew the sum of $29.75.

After herding the others into the lounge area, Smith took one of the attendants into a back room and made sexual advances to her, finally departing when her screams caused a customer to enter the room.

Smith then entered a waiting car driven by one McIntosh and the two men departed.

One of the attendants in the beauty salon immediately phoned the police and gave a description of the automobile in which the accused had fled, including the license number and the number of persons in the vehicle.

An FBI agent returning to Muncie from Anderson, Indiana heard the police alert and noticed an automobile matching the description near him at an intersection and gave chase. He apprehended McIntosh after Smith jumped from the moving automobile, and a Muncie police officer shortly thereafter captured Smith.

On the evening of that day, June 8, Smith made a full confession to the Muncie City Police and the Delaware County Deputy Prosecuting Attorney, the latter being a former boyhood classmate of Smith. Prior to giving the confession, Smith was fully informed of his constitutional rights on three different occasions. After the confession was transcribed by the police, Smith signed each page of the confession and acknowledged in writing that he had been informed of his constitutional rights.

On the following evening, Smith requested a conference with one of the officers and agreed to take him to the place where he had discarded the gun. This was done and the

loaded weapon, a .32 calibre revolver, was obtained and became State's Exhibit No. 6.

Smith filed a motion to suppress evidence as to the voluntariness of the confession and the fruits of that confession. The court overruled this motion prior to the jury trial which was held on July 25, 1972. On August 3, 1972, the jury returned a verdict of guilty of Armed Robbery and Smith was sentenced upon the verdict to a determinate sentence of ten years (the minimum sentence).

Smith appeals from denial of his Motion to Correct Errors.

## ISSUE ONE

Was it reversible error to admit Smith's confession into evidence?

Smith contends that the confession was obtained from him by the Deputy Prosecutor, an old friend, who instilled the emotion of hope in his mind, that his old friend would help him avoid punishment, i.e., that he was duped into waiving his constitutional rights (relying on *State* v. *Muse* (1971), 11 N.C.App. 389, 181 S.E.2d 207).

The State responds that the waiver was knowingly, intelligently and voluntarily given and extensive warnings were made informing Smith of his rights and, further, that no "promises" were made to Smith.

## ADDITIONAL FACTS

At the hearing on Smith's motion to suppress the confession, witness Robert Barnet, the Deputy Prosecutor, testified regarding the nature of Smith's confession.

"A. As I remember when I first saw him. The first thing I did I shook hands with him when I walked in at 10:10 and I said, 'John you have a right to a lawyer.' and at that time I went through the whole list of rights. . . ."

\* \* \*

"Q. All right. Now during the course of your conversation how many times did you advise him of his constitutional rights?

"A. As I remember I advised him twice before any of the other officers were called and then I believe one of the officers were called in, he was advised again. I also understand he was advised of his rights before I saw him at 10:10."

Officer Golden, who received Smith's confession, testified at trial regarding the circumstances under which such confession was given. Included in his testimony was the following:

"Q. Now, at that time [when the confession was taken], to your knowledge, do you know whether or not the Defendant, John Ellis Smith was advised of his Constitutional Rights?

"A. Yes sir.

"Q. By whom?

"A. I advised him of his rights. He told me at that time he had been advised of his rights previous to that. There was a statement taken, he was advised again, then. On the evening of the ninth, when I talked to him, I advised him again, at that time."

Moreover, the typewritten transcription of Smith's confession, introduced into the evidence at trial as State's Exhibit No. 8, also contains a full recitation of Smith's constitutional rights.

The Deputy Prosecutor did reminisce with Smith, but there is nothing in the Record of any specific promises made by the Deputy Prosecutor to Smith, only that Smith thought the Deputy Prosecutor would help him.

Smith testified he had eleven years of schooling, could read and write, and had previously been convicted of a felony.

## DECISION

CONCLUSION—There was sufficient evidence to support admission of Smith's confession as his voluntary act and, therefore, it was not error to admit it into evidence.

The burden of showing that a confession was obtained voluntarily is on the State. *Lego* v. *Twomey* (1971), 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618; *Lewis* v. *State* (1972), 259 Ind. 431, 435, 288 N.E.2d 138, 140; *Smith* v. *State* (1969), 252 Ind. 425, 438-439, 249 N.E.2d 493. *Also see James* v. *State* (1972), 258 Ind. 392, 281 N.E.2d 469.

And in reviewing a confession to determine if it was voluntarily given, a reviewing court will examine the trial proceedings to determine if there was substantial evidence of probative value that the confession was knowingly, intelligently and voluntarily given. *Jackson* v. *Denno* (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; *Dawson* v. *State* (1975), 163 Ind. App. 493, 324 N.E.2d 839; *Snipes* v. *State* (1973), Ind. App., 298 N.E.2d 503 (reversed on other grounds, 261 Ind. 581, 307 N.E.2d 470). *Cf. Winston* v. *State* (1975), 263 Ind. 8, 323 N.E.2d 228. And this court will not reweigh the evidence to reach a different conclusion. *Smith* v. *State, supra; Matthews* v. *State* (1959), 239 Ind. 252, 156 N.E.2d 387; *Dawson* v. *State, supra.*

In view of the extensive warnings given Smith and the failure to point to any promises made to him, other than a vague promise of help from "his friend", the Deputy Prosecutor, we can only conclude that the confession was voluntarily given and was supported by sufficient evidence.

Smith's statement that the "emotion of hope" instilled in him by the Deputy Prosecutor vitiates the voluntariness of his confession has no Indiana authority to support it and his reliance on a North Carolina case *(State* v. *Muse, supra)*[1] is misplaced because no warnings whatsoever were given the defendant in that case.

---

1. *State* v. *Muse* (1971), 11 N.C.App. 389, 181 S.E.2d 207 was subsequently reversed by the North Carolina Supreme Court in *State* v. *Muse* (1971), 280 N.C. 31, 185 S.E.2d 214.

## ISSUE TWO[2]

Was a proper chain of custody established for the admission into evidence of certain money (State's Exhibit No. 1) and certain bullets removed from the .32 calibre revolver (State's Exhibit No. 5)?

Smith relies generally on the landmark case of *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, and argues that the State's witness did not properly identify the bullets or the money and that there was a missing link in the chain of custody because the person in whose custody they were placed in the prosecutor's office did not testify.

The State responds that the chain of custody need not be perfect and that the exact whereabouts of these exhibits at all times was demonstrated.

## ADDITIONAL FACTS

Exhibit No. 1 consisted of money taken from both Smith and Richard McIntosh, Smith's companion. Officer Stonebraker testified that the money had been taken from Smith and McIntosh in Stonebraker's presence by Officer Eiler. Stonebraker testified that he had initialed and dated the bills received and turned them over to Captain Daugherty. Stonebraker also testified he believed the exhibit to be the same money he had taken from them because the bills in the exhibit bore his same initials which he had placed on the bills at that time.

---

2. Smith makes no discernible argument in his brief as to the sufficiency of the chain of custody of the .32 calibre revolver, and any such error is therefore waived. AP. 8.3.

Smith also argues error by the trial court in admitting the gun (Exhibit No. 6), the bullets (Exhibit No. 5), and certain money (Exhibit No. 1) because they were irrelevant, but the only objection made at trial was as to inadequacy of chain of custody, so any issue as to relevancy has been waived. *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E.2d 407; *Garner* v. *State* (1975), 163 Ind. App. 573, 325 N.E.2d 511. Even had there been no waiver, their relevancy is obvious.

Captain Daugherty testified he placed the bills in envelopes and had signed the envelopes in Stonebraker's presence. Daugherty further stated the envelopes were then turned over to Officer Baker, who testified that he had placed the envelopes in his locker located at the Delaware County Jail. The testimony further established that no one had access to Baker's locker other than Baker himself. On the Monday immediately prior to trial, Baker stated that he went to his locker, removed State's Exhibit No. 1, and brought it to the courtroom and turned over the exhibit to the prosecuting attorney, who retained it until trial the next day.

Exhibit No. 5 consisted of bullets taken by Officer Golden from the .32 calibre revolver which Smith acknowledged as his on the occasion of retrieving the gun from the area where Smith had discarded it shortly after the robbery. Officer Golden testified that he had removed the bullets from the gun, had placed them in a plastic envelope used for such purposes and filled out the tag attached to the bag which identified its contents, the date, and the initials of Officer Golden. The bag was then stapled shut so that the contents would be secure and the bag placed in Officer Golden's property locker to which no one had access (he had the only key). On the day before the trial, the exhibit was turned over to a Mr. Conkle in the prosecutor's office, who was an investigator for the prosecutor, and the next day Officer Golden brought the exhibit to the courtroom and testified that the exhibit of bullets in every respect appeared to be as he had last observed it.

DECISION

CONCLUSION—It is our opinion that a sufficient chain of custody of the money (Exhibit No. 1) and the bullets (Exhibit No. 5) was established so as to warrant their admission into evidence.

In recent years the subject of chain of custody has received considerable treatment by this court and the Indiana Supreme Court. *Graham* v. *State, supra; Guthrie* v. *State* (1970), 254

Ind. 356, 260 N.E.2d 579; *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E2d 541; *Cartwright* v. *State* (1972), 154 Ind. App. 328, 289 N.E.2d 763; *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772.

Summarizing the law, we said in *Butler* v. *State:*

"While a complete chain of custody must be established as described in *Graham, supra, the State is not required to exclude every remote possibility of tampering. Evidence which strongly suggests the exact whereabouts of the exhibit at all times will often be sufficient* for chain of custody purposes. This was acknowledged in *Guthrie* v. *State, supra,* where, again, Justice Hunter said:

" '* * * However, *where* as here, the state has introduced *evidence* which *strongly suggests the exact whereabouts of the evidence, the issue becomes one of probabilities.*

" 'Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. See People v. Riser (1956), 47 Cal.2d 566, 305 P.2d 1; Breeding v. State (1959), 220 Md. 193, 151 A.2d 743; State v. Baines (Mo. 1965), 394 S.W.2d 312; Commonwealth v. White (1967), 353 Mass. 409, 232 N.E.2d 335. We believe such a rule is well grounded in logic and reason.' [Original emphasis.]

"As a result '[a] mere possibility that the evidence could have been tampered with will not make it totally objectionable.' Kolb v. State, *supra.*" (Emphasis supplied.) 154 Ind. App. at 369, 289 N.E.2d at 777.

Smith would require an absolutely perfect chain of custody. This is not necessary. The evidence must establish a complete chain and strongly suggest the exact whereabouts of the exhibit(s) in question at all times. *Graham* v. *State, supra; Guthrie* v. *State, supra; Kolb* v. *State, supra; Cartwright* v. *State, supra; Butler* v. *State, supra.*

While all possibility of tampering may not have been excluded, it is not necessary that such be the case. *Kolb* v. *State,*

*supra.* The evidence strongly suggests the exact whereabouts of these two exhibits at all times and is, therefore, sufficient to establish a chain of custody.

## ISSUE THREE[3]

Is the Armed Robbery Statute, IC 1971, 35-12-1-1, Ind. Ann. Stat. § 10-4709 (Burns 1956), unconstitutional because it violates the constitutional prohibition against infliction of cruel and unusual punishment prohibited by § 16 of Article 1 of the Indiana Constitution and the 8th Amendment of the Constitution of the United States?

Smith contends that the Armed Robbery Statute invites arbitrary imposition of a penalty because under the terms of the Statute he could have received a determinate sentence of as little as ten years' or as much as thirty years' imprisonment and relies on *Furman* v. *Georgia* (1972), 408 U.S. 238, 92 S.Ct. 2726, 3 L.Ed.2d 346.

The State contends the statute is constitutional on its face and that Smith has not demonstrated how it is in any manner being arbitrarily applied and that imprisonment is not cruel and unusual punishment.

## DECISION

CONCLUSION—The Armed Robbery Statute provides:

"10-4709. Commission of or attempt to commit crime while armed with deadly weapon.—Any person who being over sixteen [16] years of age, commits or attempts to commit any felony while armed with any dangerous or deadly weapon, or while any other person is present and aiding or assisting in committing or attempting to commit such felony is armed with any dangerous or deadly weapon, shall be guilty of a separate felony and upon conviction

---

3. Smith also mounts a constitutional attack against the Armed Robbery Statute because it prohibits the trial court from suspending the sentence . . . an attack without benefit of any authority whatsoever. Thus, it is waived. AP. 8.3; *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805.

shall be imprisoned for [a] determinate period of not less than ten [10] years nor more than thirty [30] years. The penalty imposed by this chapter [section] is to be fixed by the court or jury trying the case, which sentence the court shall not have the power to suspend: Provided, That such court shall have the right to provide in the judgment that such term of imprisonment shall not run concurrently with any imprisonment that may be adjudged for any additional crimes being attempted or committed at the same time but that such term of imprisonment shall commence at the expiration of the imprisonment adjudged for any such additional crimes. [Acts 1929, ch. 55, § 1, p. 139; 1965, ch. 298, § 1, p. 819; 1969, ch. 206, § 1, p. 771; 1971, P.L. 453, § 1, p. 2092.]"

Confronting Smith is this long accepted and recently restated principle that:

"Generally, the constitutional prohibitions against cruel and unusual punishments, however, are proscriptive of atrocious or obsolete punishments and are aimed at the kind and form of the punishment, rather than the duration and amount. Hobbs v. State (1892), 133 Ind. 404, 32 N.E. 1019; 18 L.R.A. 774; Kistler v. State (1920), 190 Ind. 149, 129 N.E. 625; Badders v. United States (1916), 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706.

"These are primarily legislative considerations, and we are not at liberty to set aside a conviction and sentence because, on the record, they seem severe. Blue v. State (1946), 224 Ind. 394, 67 N.E.2d 377; Mellot v. State (1942), 219 Ind. 646, 40 N.E.2d 655.

"It is only when a criminal penalty is not graduated and proportioned to the nature of an offense, or where it is grossly and unquestionably excessive that this provision of the Constitution is intended to apply. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. Such is not the case here." Hollars v. State (1972), 259 Ind. 229, 236, 286 N.E.2d 166, 170.

There is no indication on the face of this statute that the punishment is obsolete or atrocious or that it is unquestionably excessive or that it is not graduated or proportioned to the nature of the offense.

We are not at liberty to invade the province of the legislature in determining the amount of punishment for a par-

ticular crime. *Johnson* v. *State* (1971), 256 Ind. 497, 269 N.E.2d 879; *Gingerich* v. *State* (1948), 226 Ind. 678, 83 N.E.2d 47.

Consistent with this principle is the frequent holding that imprisonment is constitutionally permissible and is not cruel and unusual punishment. *Brown* v. *State* (1974), 261 Ind. 619, 308 N.E.2d 699; *Emery* v. *State* (1973), 261 Ind. 211, 301 N.E.2d 369; *Shack* v. *State* (1972), 259 Ind. 450, 288 N.E.2d 155; *Hollars* v. *State, supra; Johnson* v. *State, supra; Taylor* v. *State* (1968), 251 Ind. 236, 236 N.E.2d 825; *Gray* v. *State* (1974), 159 Ind. App. 200, 305 N.E.2d 886.

So this statute appears to be constitutional, yet it is true that it may be unconstitutionally applied. *Yick Wo* v. *Hopkins* (1886), 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. However, the challenger of a statute claiming unconstitutional application must show how the application is unreasonable. *Sturrup* v. *Mahan* (1974), 261 Ind. 463, 305 N.E.2d 877; *Chaffin* v. *Nicosia* (1974), 261 Ind. 698, 310 N.E.2d 867; *Sumpter* v. *State* (1974), 261 Ind. 471, 296 N.E.2d 131.

Faced with a statute which is exact on its face in the determination of the offense and the punishment, Smith must demonstrate how this statute has been unconstitutionally applied. He stresses the considerable discretion in the jury to apply a sentence ranging from a ten-year determinate sentence to as much as a thirty-year determinate sentence so that the statute is "pregnant with opportunity to develop whim and prejudice".

Beyond this naked assertion he does not go and draws upon the rationale of *Furman* v. *Georgia, supra,* to support the concept of an arbitrarily applied statute amounting to cruel and unusual punishment. The broad language of that case is of no comfort to Smith because the severe penalty (death) involved was shown to bear heavily on the poor and minorities who could not retain competent counsel. Smith neither alleges

nor demonstrates that the Armed Robbery Statute has been arbitrarily imposed against him, only that it *could* have been. In fact, he received the minimum sentence possible under the statute.

Consequently, his constitutional argument is without merit.

Under these circumstances, we can only conclude that the Armed Robbery Statute is constitutional and was not arbitrarily applied to Smith.

The judgment is affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 332 N.E.2d 121.