## MICHAEL WAYNE WALLS v. STATE OF INDIANA

[No. 1-1176A210. Filed November 9, 1977. Rehearing denied December 8, 1977. Transfer denied May 26, 1978.]

*Malcolm G. Montgomery*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *Alembert W. Brayton*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant, Michael Wayne Walls (Walls), was convicted following a trial by jury of voluntary manslaughter. His appeal presents the following questions for our review:

1.   Whether inconsistent exculpatory statements admitted into evidence were voluntarily given.

2. Whether photographs admitted into evidence were unduly prejudicial.

The facts necessary for our disposition of this appeal are as follows: On May 8, 1974, Walls shot and killed Forester Johnson. An eyewitness, Richard Lee Scott, saw Walls shoot Johnson. Walls turned himself in to the police on May 8, 1974. At approximately 7:00 P.M. on May 8, 1974, Walls gave a statement to the police indicating that the shooting was an accident. Walls was read his Miranda rights, and signed a waiver thereof, before giving his statement. On May 10, 1974, Walls gave another statement to the police this time indicating that the shooting was in self-defense. Again, this statement was preceded by Walls being read his Miranda rights and his signing a waiver thereof. The statement of May 10, 1974, was given in the presence of his mother. Walls was receiving tranquilizers at the time he gave the second statement. Also, a public defender was appointed for Walls on May 9, 1974. The police who were aware of the appointment did not inform Walls' attorney that a second statement was to be taken.

I.

Walls contends that the statements he gave the police on May 8, 1974, and again on May 10, 1974, were involuntary because he was insane, on medication and no attorney was present at the time the statements were given. We do not agree.

The experts who testified at the suppression hearing offered conflicting views as to whether Walls was mentally competent enough to appreciate the significance of waiving his Miranda rights and giving a statement to the police. Also, the evidence was conflicting on the effect which the tranquilizers may have had upon Walls.

It is axiomatic that a criminal defendant can voluntarily waive his constitutional rights. However, at the hearing on a motion to suppress a confession the state bears the heavy burden of proving the confession voluntary beyond a reasonable doubt. *Lindsey v. State* (1976), 264 Ind. 198, 341 N.E.2d

505; *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811. On review this court will not disturb a trial court's ruling on the admissibility of a confession or other statement given the police if based on substantial—albeit conflicting—evidence. *Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844; *Cowell v. State* (1975), 263 Ind. 344, 331 N.E.2d 21; *Smith v. State* (1975), 165 Ind. App. 291, 332 N.E.2d 121.

There is no claim that Walls' exculpatory statements were the product of threats or other forms of coercion. His Miranda rights were read to him and he indicated his understanding by signing a waiver relinquishing those rights. Further, both statements given the police by Walls indicate that corrections were made and initialed by Walls.

With the expert testimony on Walls' capacity to appreciate the significance of giving contradictory statements to the police being in conflict we are unable to say that Walls' statements were not voluntarily given.

Walls contends there is another reason why we should hold the statement he gave the police on May 10, 1974, involuntary. A public defender was appointed to represent Walls on May 9, 1974. The police took the May 10th statement without notifying Walls' public defender. It is not contended that Walls was not informed of his right to counsel, nor that he was unaware that counsel had been appointed for him. Walls, in essence, requests this court to determine as a matter of constitutional law that it is error, *per se*, for police to take any statement from a criminal defendant who is in custody without first giving notice to that defendant's privately retained or court-appointed counsel.

Our research of Indiana law has uncovered no case which answers this question. However, it is well settled that a criminal defendant may upon arrest request counsel, thereby causing any interrogation to stop, and thereafter change his mind and make a voluntary statement to the police. *Thompson v. State* (1971), 256 Ind. 48, 267 N.E.2d 49; *Rouse v. State* (1971), 255 Ind. 670, 266 N.E.2d 209.

It is the opinion of this court that a criminal defendant's statement, in all other respects voluntary, is not made inadmissible *per se* by the fact that the defendant's retained or court-appointed counsel is not given advance notice that the defendant wishes to make a statement. *United States v. Cobb* (3rd Cir. 1973), 481 F.2d 196, *cert. denied*, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224; *United States v. Springer* (7th Cir. 1972), 460 F.2d 1344, *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125. Rather, this fact should be considered by the trial court with a critical eye along with all other relevent factors when called upon to determine from the totality of the circumstances whether the State has met its heavy burden of proof of showing that the statement was voluntarily made. Although we are convinced that the practice utilized in the case at bar does not render a statement made by a defendant *per se* inadmissible as a matter of constitutional law this court does not wish to be understood as approving this practice. We agree with the majority in *Coghlan v. United States* (9th Cir. 1968), 391 F.2d 371, at 372, *cert. denied*, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139, wherein it was stated:

> ". . . The better, fairer, and safer practice is to afford the defendant's attorney reasonable opportunity to be present. When this is done the heavy burden of proving a waiver of constitutionally protected rights is immeasurably eased."

Also, we are of the opinion that assuming *arguendo* that Walls' inconsistent exculpatory statements were not voluntary given the constitutional error committed was harmless beyond a reasonable doubt. The State produced several witnesses who saw Walls with the deceased prior to the shooting and one who testified he saw Walls shoot the deceased. *See, Sexton v. State* (1974), 262 Ind. 554, 319 N.E.2d 829; *Mareno v. State* (1975), 166 Ind. App. 441, 336 N.E.2d 675.

## II.

Walls contends that the trial court erred in admitting into evidence over his objection State's Exhibit No. 7. Exhibit No. 7 showed the deceased lying on an autopsy table prior to the autopsy actually being performed. It depicted the point of entry of the bullet which resulted in the victim's

death because of excessive bleeding. It also depicted the results of a recent surgical operation. This photograph was identified by the doctor who performed the autopsy.

Walls' contention has been answered by our Supreme Court in the case of *Walker v. State* (1976), 265 Ind. 8, 349 N.E.2d 161, at p. 165, wherein it was said:

"The State's exhibit No. 4 was an autopsy photograph showing. It showed three circular wounds in the locations described by the pathologist and the nurses. (Sutures over the stomach were also visible.)

This photograph was illustrative of the witness' testimony and tended to prove the cause of death. The wounds relevant to the case were not obscured by the surgical incisions, as they were in *Warrenburg v. State*, (1973) 260 Ind. 572, 298 N.E.2d 434. The photograph was not unlike those in *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264 and *Birkla v. State*, (1975) 263 Ind. 37, 323 N.E.2d 645, and there was no error in their admission.

Judgment affirmed.

Robertson, C.J. and Lybrook, J. concur.

NOTE—Reported at 368 N.E.2d 1373.