COMMONWEALTH *vs.* ROBERT CORCIONE.

Middlesex.     September 17-18,1973.—February 15, 1974.

Present:  TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Practice, Criminal,* Charge to jury, Capital case. *Homicide. Common
Enterprise. Evidence,* "Lie-detector" test.

In the light of all the instructions to the jury at the trial of indictments for
murder, armed robbery, and breaking and entering a dwelling house
and assault on a person therein, it was reversible error for the judge to
charge that the case could permit only one of two results: either not
guilty on all indictments, or guilty on all indictments, and a new trial on
all three indictments was necessary. [615-618]

In a proceeding for murder and two other offences, where it was deter-
mined that the judge gave erroneous instructions to the jury, this court
reversed convictions pursuant to the power granted to it by G. L. c. 278,
§ 33E, even though there had been no objection by the defendant to the
judge's charge. [618]

Observations by this court as to instructions to the jury with respect to par-
ticipation by the defendant in a common enterprise and other matters
at a second trial of indictments for murder, armed robbery, and break-
ing and entering a dwelling house and assault on a person therein.
[618-619]

This court observed that at a second trial of indictments for murder and
two other offences the judge might well feel impelled to exclude
evidence that the defendant had said that he did not think he passed a lie
detector test. [619-621]

INDICTMENTS found and returned in the Superior Court on
May 11, 1971.

The cases were tried before *Robert Sullivan,* J.

*Michael J. Haroz* for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the
Commonwealth.

HENNESSEY, J. The defendant was convicted after a jury
trial of murder in the first degree (c. 265, § 1) with a recom-
mendation that the death penalty be not imposed (c. 265,

Commonwealth *v.* Corcione.

§ 2), armed robbery (c. 265, § 17), and breaking and entering a dwelling house and assault on a person therein (c. 266, § 14). He was sentenced to three concurrent life terms, and now appeals his convictions and sentences pursuant to the provisions of G. L. c. 278, §§ 33A-33G, inclusive. The defendant argues ten assignments of error, which fall into three distinct categories: (1) alleged errors in the judge's charge to the jury, (2) alleged error in the denial of the defendant's request for a change of attorneys, and (3) alleged error in the admission of testimony referring to the results of a lie detector test. Cases against other defendants were severed and the defendant alone was involved in the trial with which we are here concerned.

The only assignments of error which are based on an exception saved by the defendant are those concerning the defendant's request for a change of attorneys. All other assignments are addressed to our power in all capital cases to redress any miscarriage of justice even in the absence of an exception. See G. L. c. 278, § 33E.

We summarize the evidence. Jeffrey Ray, a then sixteen year old acquaintance of the defendant, testified that on June 18, 1970, he suggested to the defendant and one Michael Gardner that they break into one Joseph Perry's house. The three surveyed the house and later that evening returned in a car driven by one Joseph Cleary, who then departed. They waited until a visitor left the Perry house, raised a window and entered the front room of the house. On discovering that a locked door barred access to the rear of the house they left and parted company.

Gardner, a then fifteen year old acquaintance of the defendant, testified that he participated in the activity described above and that he remained with the defendant when they left the Perry house. They were joined by Cleary and made a trip to Woburn with three girls, one of whom, Cathy Gairachty, was dating Cleary. After their return to Cambridge and at Cleary's suggestion the defendant, Gardner, Cleary and Gairachty, returned to the house. While the girl waited in the car the others entered through the same

window as earlier, successfully removed a box that blocked the kitchen door, and entered the back bedroom where they encountered Perry. While the defendant held the victim's feet and Cleary his shoulders, Gardner searched his apparel for money. When Gardner was unsuccessful, Cleary hit the victim in the face. To facilitate further search by Gardner and the defendant, the latter and Cleary rolled the victim over, which resulted in Perry's falling on the floor. After the search uncovered some money, Cleary began kicking the victim in the face, and Gardner interceded in his behalf. On Cleary's orders the other two searched the dwelling; when they discovered Cleary again beating the victim they remonstrated with him until he agreed to stop. Shortly after, they left and went to Cleary's mother's house where they divided the money.

Later, Cleary insisted they return as he needed more money. Gardner agreed and the defendant said to him, "When Joe [Cleary] goes over there we can see if that guy is all right." They reëntered the window and returned to the rear bedroom where Cleary held the victim while the two boys searched the bedroom and the other rooms. Twice more they discovered Cleary beating Perry and both interceded. At one point the defendant in walking across the victim on the bed kicked him "a couple of times." He was told not to by Gardner and said, "All right."

Cleary told them to get the car but as they were leaving they saw him beating Perry repeatedly with a white stick; they ran back and stopped him and then Gardner told the defendant  to get Cleary out of there while he got the car. They left without taking anything and later separated. The following morning Gardner helped Cleary dispose of his bloody clothes.

There was evidence, including medical testimony, from which the jury could properly infer that Perry died the following day as a result of the beating described above.

Other testimonial evidence was introduced to corroborate aspects of the above story or to show the defendant's consciousness of his guilt; the latter included mention by the

defendant of his belief that he had failed a lie detector test. Exhibits included physical evidence recovered from the victim's apartment or from the place of its disposal.

The defendant called four witnesses to impeach the witness Ray. Two boys testified that after the crime Ray was unusually free with his money, giving them each $5 for each of two games of pool in which they beat him. A third boy was dismissed after testifying that he did not recall what date he had a conversation with Ray. Ray was then recalled and denied having a conversation with the fourth defence witness, who testified that prior to the crime (though she was confused as to the date) Ray and his brother discussed robbing Perry, and Ray said, "I will have to kill the guy."

We have concluded that, because of errors in the judge's instructions to the jury, the judgments are to be reversed and the defendant shall have a new trial as to all indictments.

1. The defendant argues that the definition of malice included in the charge was erroneous. In view of our ruling below that there was reversible error in the charge affecting all indictments, it is unnecessary to discuss the contention concerning malice, except to comment that the charge defined the term in traditional language.

The defendant's major arguments as to the charge relate to the principles of joint criminal enterprise. He points out that there was substantial evidence here from which the jury may have held him criminally responsible for the conduct of two others, particularly Cleary. His contention is that the judge instructed as to an unacceptably broad concept of joint liability in his discussion of all of the crimes charged (see *Commonwealth* v. *Richards,* 363 Mass. 299 [1973]), except as to his charge concerning felony murder. See *Commonwealth* v. *Devereaux,* 256 Mass. 387, 395 (1926). Even as to the instructions concerning felony murder, he contends that the judge erroneously removed from the jury's consideration the issue of whether the murder was a natural and probable consequence of the burglary or robbery. He also argues that the judge improperly precluded consideration by the jury of a verdict of guilty of second degree murder. G. L. c. 265, § 1.

See *Commonwealth* v. *Chase,* 350 Mass. 738 (1966).

It would serve no useful purpose to examine the merits of the defendant's particular line of argument, since the errors in the concluding portions of the charge as we have identified them below in this opinion would serve to vitiate any earlier instructions on joint responsibility, however correct those earlier instructions might have been. The major invalidity of the charge consisted in its treatment of all indictments as rising or falling together. It is fair to say that the jury may well have reached their verdicts under the impression that the defendant should be found guilty on all indictments, including first degree murder, if they found criminal complicity of any kind on his part.

In demonstrating that there was error here which requires a new trial, it will be helpful for us to summarize the charge. After a full exposition of the necessary, usual and preliminary concepts, the remainder of the charge concerned itself for the most part with instructions concerning the elements of the crimes. The judge read to the jury from G. L. c. 265, § 1, which defines the crime of murder. This was followed by a delineation of the three categories of first degree murder, viz.: homicide with deliberately premeditated malice aforethought; homicide with extreme atrocity or cruelty; and homicide connected with a crime punishable by life imprisonment. The elements of proof of each of the three categories were discussed in detail.

In his discussion of the third category of first degree murder, the so called "felony murder" doctrine, the judge defined and described the elements of the two additional indictments against the defendant: armed robbery and burglary with assault. He correctly identified each of these as a crime punishable by life imprisonment and thus an appropriate basis for a first degree murder conviction based on the felony murder doctrine.

The charge was concluded with instructions which for the greater part stated (1) a summary of the law concerning concert of action among several participants, (2) a repetition of some of the prior instructions concerning first degree

murder, and (3) a delineation of permissible verdicts which included *an instruction that there must be three not guilty verdicts or three guilty verdicts,* with the further statement that the jury could return a verdict of guilty of first degree murder or guilty of second degree murder. After a conference with counsel out of the jury's hearing, the judge then gave further instructions which required the jury to consider the three counts separately, and discussed various combinations of permissible verdicts.

Thus the judge gave two successive and opposed sets of instructions as to whether identical verdicts were required. These two versions are set out in full in Appendix A annexed to this opinion, together with the intervening colloquy with counsel.

About two hours after they had commenced their deliberations, the jury returned to court with three written questions for the judge's consideration. Two of those questions are not relevant to our discussion here. The third question, however, was as follows: "Is there an interpretation as to the extent of being associated with a crime? That is, does he receive full penalty for a crime even if he is not fully or chiefly involved?" The judge answered the question with further instructions at some length, chiefly emphasizing the responsibility of a participant for the acts of his confederates in "the crime."

These supplementary instructions are shown in Appendix B annexed to this opinion.

We conclude that the defendant shall have a new trial as to all indictments, because the judge instructed the jury that the case would permit only one of two results: either not guilty on all indictments, or guilty on all indictments. Although the judge attempted at the close of the charge to modify prior instructions so as to permit the return of dissimilar verdicts among the three indictments, his words were equivocal and in our view compounded rather than corrected the error. His instructions in response to the jury's third written question, to which we have alluded above, in particular his repeated reference to "the crime," probably served to emphasize his

original instruction that the verdicts must be identical. Further, we have determined that there must be a new trial even though defence counsel made no objection to the charge and, indeed, agreed with the judge that the three indictments should all "stand or fall together."

We have determined that there must be a new trial *on all three* indictments because it is impossible for us to determine the reasoning of the jury pursuant to the erroneous charge. It is clear that the jury must have found that the defendant was present at the time and place of the crimes. There likewise was evidence to warrant guilty verdicts on each of the three indictments, if each had been considered separately under appropriate instructions. On the other hand, the jury, considering each indictment separately, even after reaching a conclusion that the defendant was present at the time and place of the crimes, were warranted in returning a not guilty verdict as to all of the indictments, or some of them. This follows from the privilege of the jury to accept or reject evidence selectively, as long as they do not impermissibly distort the evidence in the process.

Nevertheless, under the "all or nothing" instructions the jury may have determined the defendant's guilt as to any one of the three indictments and, without further deliberation, proceeded to return guilty verdicts as to all charges. Also, if that was the case, we cannot now ascertain which one of the three indictments was the starting point in their reasoning. Indeed it can be said that the charge permitted the jury to return guilty verdicts on all indictments if they found that the defendant was criminally involved to any extent. It follows that there is no assurance as to any one of these indictments that the jury considered the specific offence and concluded that the defendant was guilty thereof beyond a reasonable doubt. Thus a new trial is required as to all indictments.

Presumably, in posing the "all or nothing" charge to the jury, the judge had concluded that identical verdicts accorded with the weight of the evidence. We can conjecture, also, that the concurrence of defence counsel in such instructions was impelled by tactical motives. Cf. *Commonwealth*

v. *Bernier,* 359 Mass. 13 (1971). Perhaps he reasoned that the jury would acquit this youthful defendant of all charges, rather than return a guilty verdict on the murder indictment. We do not say that there are never situations which are so clearly monolithic in nature as to require identity of verdicts on two or more indictments for various crimes. We do say that on the total evidence presented in this case it was permissible to find various degrees of criminal involvement by the defendant. Therefore the defendant should not have been deprived of his right to have the jury decide all relevant issues of fact.

We have also determined that the judgment shall be reversed even though there was no objection or exception by the defendant to the judge's charge. It would hardly be expected that defence counsel would object to a charge with which he apparently agreed. Nevertheless, the trial judge has the duty to state the applicable law to the jury clearly and correctly. *Commonwealth* v. *Knapp,* 10 Pick. 477, 495 (1830). *Pleasants* v. *Fant,* 22 Wall. 116 (1874). *Sparf & Hansen* v. *United States,* 156 U. S. 51, 146 (1895). The charge here did not meet that minimum standard. In our discretion, where justice requires in capital cases, we can take cognizance of legal error even in the absence of an exception. See G. L. c. 278, § 33E. We do so here.

The judge's charge (except for his instructions as to second degree murder) made no reference to lesser offences included within the scope of the indictments, nor did he permit the jury to consider any possible verdicts based on such lesser crimes. Since we have already concluded that there must be a new trial, there is no necessity for us to examine the evidence as to this issue. Such an examination would not be useful because the evidence admitted at the new trial may differ substantially from that received in the prior trial. We appreciate, also, that error may arise from the unwarranted submission for the jury's consideration of lesser included crimes (*Commonwealth* v. *Bouvier,* 316 Mass. 489 [1944]) as well as the failure to permit such consideration. *Commonwealth* v. *Kendrick,* 351 Mass. 203 (1966). See *Common-*

*wealth* v. *Campbell,* 352 Mass. 387, 392 (1967). However, we recognize that the crime of larceny may well, in the circumstances of this case, come under consideration as a lesser included offence at any retrial of these indictments. Therefore, we state, with particular regard to instructions concerning (1) a defendant's possible participation in a common enterprise and (2) the "felony murder" concept, that a conclusion by a jury that a defendant had never knowingly entered into any enterprise directed toward any crime greater than a larceny might well also control the jury's verdict as to a murder indictment. If the jury concluded that a defendant was guilty of murder solely by reason of participation in a common larcenous enterprise (see G. L. c. 266, §§ 20, 25 and 30, which make it a felony to steal in various circumstances) it could convict him of second degree, but not first degree, murder. See *Commonwealth* v. *White,* 353 Mass. 409 (1967); *Commonwealth* v. *Rego,* 360 Mass. 385 (1971). This is true because the common enterprise would not be concerned with an offence or attempted offence punishable by life imprisonment. See G. L. c. 265, § 1.

2. It is not necessary for us to consider in detail the assignments of error concerned with the denial of the defendant's motion for a change of trial counsel. It seems inevitable that a judge of the Superior Court will review the question of appointment of trial counsel for any retrial of these indictments, including an examination of any valid reasons why former trial counsel should not be reappointed. We add that one phase of the argument addressed by the defendant to this issue concerned his contention that he was precluded, for reasons which do not appear clearly, from stating his grounds for requesting a different attorney.

3. The assistant district attorney, in his direct examination of the witness Ray, made inquiry concerning a conversation the witness had with the defendant on a day subsequent to the crimes. The question, "What did you ask him?" was answered by the witness: "I asked him if he passed the lie detector test, and he said he didn't think he did." The prosecutor had informed the judge and defence counsel in ad-

vance, at a bench conference out of the hearing of the jury, that he expected that precise answer from the witness. Nevertheless, there was no objection or exception interposed by defence counsel. That fact alone might well be dispositive of the issue if it were necessary for us now to rule on it. However, we discuss the merits of the matter because of the likelihood that it may recur at any retrial of these indictments.

While lie detector evidence is incompetent in Massachusetts, *Commonwealth* v. *Fatalo,* 346 Mass. 266, 270 (1963), this court has not held that otherwise admissible evidence must necessarily be excluded because it contains mention of lie detector test results. The rule in this Commonwealth has long been that "evidence admissible for one purpose, if offered for that purpose in good faith, is not made inadmissible by the fact that it could not be used for another with regard to which it has a tendency to influence the mind." *Whipple* v. *Rich,* 180 Mass. 477, 479 (1902). Nevertheless, in some circumstances, a trial judge might reasonably conclude that he should in his discretion exclude the evidence on the ground that the prejudicial effect of mention of the results of a polygraph test outweighed the probative value of otherwise admissible testimony. Cf. *Commonwealth* v. *Richards,* 363 Mass. 299, 310 (1973), and *People* v. *Aragon,* 154 Cal. App. 2d 646, 658 (1957). Our review of the evidence in this case, and the context in which the evidence was proffered, indicate that the better course would have been to exclude the testimony, if there had been objection. It had little or no probative value for any purpose. Its tendency to establish consciousness of guilt in the defendant, if that was the ground on which it was offered, was equivocal at best. We have no way of anticipating the evidential context in which such testimony may be offered at any retrial of these indictments. Considering the potentially great influence of such testimony on a jury's reasoning, as compared to what may be doubtful grounds for admitting it, a judge on retrial may well feel impelled to exclude it upon objection, in the exercise of his

discretion if not as a matter of law.

*Judgments reversed.*
*Verdicts set aside.*

### APPENDIX A.

"The only remaining question with regard to the verdict, indictment against the Defendant for your consideration, if you determine that you have been convinced beyond a reasonable doubt of his guilt, if you have a reasonable doubt, you shall acquit him, but you may say here, as I say again, these three charges stand or fall together. That is to say, that if he is guilty of one of them, he is guilty of all three of them. If he is not guilty of one of them, he is not guilty of all three of them. They stand and fall together. . . .

"This case admits of these possible verdicts depending upon the view which has been taken by you, and depending upon whether or not you feel in all honesty, in all earnesty, in all sincerity in doing the job as Jurors whether or not the Commonwealth has sustained its burden of proof. The possible verdicts are: First, not guilty of all three counts; second, guilty of murder in the first degree, and guilty on each of the other two counts; third, guilty of murder in the first degree, with the recommendation that the death penalty not be imposed, and guilty of the other two counts. Third, guilty of murder in the second degree, and guilty of the other two counts.

"As I have indicated to you before, Mr. Foreman and ladies and gentlemen of the Jury, the posture of this case is that these three counts stand or fall together.

"May I see Counsel at this side of the Bench, please.

"(Bench conference during which the following occurred:)"

THE JUDGE (to Counsel): "Notwithstanding our conversation when we agreed that all three counts stand or fall together, it now occurs to me that guilty of murder in the second degree would be an inconsistent verdict —off the record.

"(Discussion off the record.)"

THE JUDGE (to jury): "What has been said by me with regard to all counts standing or falling together I now retract, Mr. Foreman and ladies and gentlemen of the Jury, notwithstanding that Counsel and I had agreed to this, but it occurs to me that I must now retract the possibility of the verdict and say each of these three counts must be considered separately, and that the possibility of the verdicts are, of course, as follows: First, Mr. Foreman and ladies and gentlemen, you will consider the murder indict-ment, and there is a possibility that you will find the Defendant either guilty or not guilty of first degree murder. Then you must consider the other counts separately, and determine whether or not guilty or not guilty of the other two counts.

"The second possibility is guilty of murder in the first degree. First, the

possibility of not guilty, considering all three counts separately. Second, the possibility of murder in the first degree, then you will consider separately the other two counts, bearing in mind my instructions to you with regard to one type of murder in the first degree, which is, of course, murder while committed in the commission or attempted commission of the crime which, in itself, is punishable of life imprisonment.

"Thirdly, you will consider guilty of murder in the first degree, with a recommendation of clemency. That is, that the sentence of death be not imposed, and then you will consider the other two counts separately.

"So when you are considering the murder count, you will recall my instructions to you with regard to the one variety of murder in the first degree, which is that murder which is committed during the commission or attempted commission of a crime which, in itself, is punishable of life imprisonment.

"Fourthly, you will consider guilty of murder in the second degree, which would, of course, necessitate a finding of not guilty of the other two counts; because if you found a defendant guilty of the other two counts, it would, of necessity, be guilty of murder in the first degree, since those crimes are crimes which are punishable by imprisonment. In order for you to find the Defendant guilty of murder in the second degree, you would, of necessity, have to find him not guilty of the other two counts, both of which are punishable by life imprisonment. And, in that event, you could find him guilty of murder in the first degree and not guilty of the other two counts —guilty of murder in the second degree, I should say, and not guilty of the other two counts. Those are the alternatives: not guilty on all three counts, or guilty of first degree, guilty of first degree with a recommendation of clemency, guilty of murder in the second degree which would necessarily require that you find him not guilty of the other two counts. Since one of the elements of murder in the first degree is the crime of a murder committed while in the commission or attempted commission of a crime punishable by death. Those are the possibilities.

"Therefore, I say to you that you will consider each of these three counts separately in determining the guilt or innocence of the Defendant on each of these three counts.

"Now, in closing let me say this: These possible verdicts are depending upon your view of the evidence. As men of conscience and ladies of conscience, realizing the awful solemnity of the oath and its meaning, approach the performance of your duty with courage and a firm desire to afford each side that measure of justice to which it is entitled. If you have a reasonable doubt as to the guilt of this Defendant in any or all three of these counts, you shall acquit him. If, on the other hand, you feel that you have reached a moral certainty of his guilt on any or all of these counts, you will find him guilty."

## Appendix B.

"Three, is there an interpretation as to the extent of being associated

with a crime? That is, does he receive full penalty for a crime even if he is not guilty [*sic:* fully?] or chiefly involved? The answer is that there is an interpretation as to the extent of being associated with a crime, and I have given it to you. I will read it again, what I read to you this morning.

("Reading) 'It is not essential that murder should be a part of the original plan if it were one of the probable consequences of the robbery by the Defendant. There can be no doubt of the general rule of law that a person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may necessarily and naturally flow from it, and if he combines and confederates with others to accomplish an illegal purpose, he is liable criminally for the acts of each and for all of those who participate with him in the execution of the unlawful design or the crime.'

"So the answer to the question is that it is the interpretation that a person is liable for — if he aids and abets and takes part in the crime, he is liable for the crime and for the criminal acts of those with whom he is associated in the commission of the crime. And that there is no degree of penalty for participation, provided that the Jury is convinced beyond a reasonable doubt of participation in aiding and abetting in the commission of the crime. Then, indeed, the Defendant is responsible for the acts of all who were, if the Jury so finds, who were confederated with him or associated with him in the commission of the crime. The fact that he may or may not have been, as you have put it, Mr. Foreman, even if he is not fully or chiefly involved is of no importance for your consideration. For he is responsible for the acts of those with whom he is associated in the commission of the crime, if you so find.

"Now, one more thing, Mr. Foreman and ladies and gentlemen, to avoid any difficulty with regard to the conclusion of the charge. With regard to possible verdicts, as I have indicated to you, if you have a reasonable doubt, you will handle each of these individually. If you have a reasonable doubt of the guilt of the Defendant, you will, of course, acquit him. If, on the other hand, you have been convinced beyond a reasonable doubt that either he and/or his confederates, if you so find — for he is responsible, as I have indicated to you, for the acts of his confederates, if you find he was acting in conspiracy as a confederate in the commission of the crime, he is, therefore, responsible for the acts of all others of the crime. If you find that there was no [*sic*] gross cruelty and atrocity, then, of course, the degree of murder shall be first degree murder. If you find that it was deliberately premeditated, of course, the degree of murder will be first degree. If you find that it was done in the commission of a crime which is punishable by death — and I again say to you that both of these other crimes are punishable by life imprisonment or death, the maximum penalty, so that if you find in the commission or the attempted commission of either of these other two crimes with which this man is charged, then you may not under those circumstances find this man guilty of anything but first degree murder.

"If you are convinced beyond a reasonable doubt that these acts were —if on the one hand, these acts were committed while attempting to commit a crime which is punishable by life imprisonment or death, if you so

find, then the Jury, as a matter of law, must find that the defendant is guilty of murder in the first degree.

"If you find that he is not guilty of the other two offenses, and you find further that the crime was not grossly atrocious and cruel, and you find further that it was not premeditated in accordance with my instructions, then and only then, could you find that he were guilty of second degree murder; only in such circumstances.

"I have hoped that I have answered your questions. The law is that a person is responsible for the criminal acts of his confederates when they have joined in a confederacy to accomplish the crime.

"Please continue your deliberation. The law makes no distinction between the degrees of participation of the crime. Because each of them is responsible for the acts of the other.

"All right, you may continue with your deliberation."