MASSACHUSETTS OUTDOOR ADVERTISING COUNCIL & others[1]
*vs.* OUTDOOR ADVERTISING BOARD.

Suffolk. February 19, 1980. — May 29, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Sign. Regulation. Permit. Outdoor Advertising Board. Administrative Law,* Hearing, Summary decision. *Due Process of Law,* Right to hearing.

Administrative summary procedures do not transgress statutory or constitutional rights to a hearing where those procedures are such that they allow the agency to dispense with a hearing only when the papers or pleadings filed conclusively show on their face that the hearing can serve no useful purpose because a hearing could not affect the decision. [783-786]

A regulation promulgated by the Outdoor Advertising Board which enabled it to deny without a hearing any application for renewal of a billboard license which disclosed on its face that the proposed sign failed to comply with applicable municipal ordinances or by-laws or with the provisions of G. L. c. 93D, § 2, as evidenced by a certification of noncompliance, from a local or State official but permitted the applicant to request a hearing if the request was accompanied by specific materials to support a contention that the certification was in error, did not offend the hearing requirements of G. L. c. 30A, § 13. [786-790]

A regulation promulgated by the Outdoor Advertising Board which enabled it to deny without a hearing any initial application for a billboard license which disclosed on its face that the proposed sign failed to comply with applicable municipal ordinances or by-laws or with the provisions of G. L. c. 93D, § 2, as evidenced by a certification of noncompliance from a local or State official, and made no provision for the applicant to rebut an adverse certification, violated G. L. c. 93, § 29A. [790-792]

CIVIL ACTION commenced in the Superior Court on December 11, 1975.

---

[1] Ten corporations and companies engaged in the outdoor advertising business.

A motion for preliminary injunctive relief was heard by *Bonin*, C.J.

*Wm. Gerald McElroy, Jr.,* for the plaintiffs.

*Francis S. Wright,* Assistant Attorney General, for the defendant.

KASS, J. In an effort to cull from its hearing list those billboard license applications fated for refusal, the Outdoor Advertising Board (the Board)[2] promulgated regulations which enable it to deny without a hearing any application which discloses on its face that the sign sought to be erected or maintained fails to comply with the laws of the host municipality or with the provisions of G. L. c. 93D, § 2. The plaintiffs (the advertisers) urge that the Board's regulations unlawfully deprive them of rights to a hearing to which statute (G. L. c. 30A, § 13), the Constitution of the Commonwealth (arts. 11 and 12 of the Declaration of Rights), and the Constitution of the United States (Fourteenth Amendment) entitle them. We conclude that the Board's regulations which pertain to renewals of sign permits are lawful, and that those which pertain to initial permits are not.

These issues were presented by a complaint seeking declaratory and injunctive relief. A judge of the Superior Court declared the rights of the parties and granted partial injunctive relief. Both parties appealed. Although no final judgment was entered, the parties were entitled under the second paragraph of G. L. c. 231, § 118, to appeal from the grant of a preliminary injunction. See, as to the procedure to be followed, *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, Inc.,* 5 Mass. App. Ct. 750 (1977). See, for a discussion of the availability of appellate review from orders granting or denying preliminary injunctions, *Packaging Industries Group, Inc.* v. *Cheney,* 380 Mass. 609, 610-615 (1980) While appeals from interlocutory injunctions frequently fractionate disposition of a case in a way which is burdensome to the courts and unproductive for the parties,

---

[2] See G. L. c. 16, § 14 (as appearing in St. 1963, c. 821, § 1), and G. L. c. 93, §§ 29-33.

in this case it does not appear that there was any further fact finding to be done and the parties have properly regarded the order for a preliminary injunction as the practical equivalent of a final one. We shall not describe the manner in which the judge found the board's regulations wanting because after his order, and while this appeal was pending, the board significantly altered those regulations so as to eliminate those provisions which the judge determined legally deficient. Both parties have argued this appeal on the basis of the revised regulations, published April 12, 1979, and appearing as 311 Code Mass. Regs. 3.00 (1979). It is appropriate that we consider the regulations in effect at the time we render our decision. *Thorpe* v. *Housing Authy. of Durham*, 386 U.S. 670, 673-674 (1967). *Bradley* v. *School Bd. of Richmond*, 416 U.S. 696, 711-716 (1974). This is particularly apt when a request for a declaratory judgment is involved since it is a function of declaratory proceedings to guide the future conduct of parties.

As so amended, the regulations which the advertisers attack provide, in 311 Code Mass. Regs. 3.03 (1979), that each initial application (as opposed to a renewal application) for an annual permit or for a temporary permit shall include a certification by an authorized city or town official that the proposed sign is, or is not, in conformity with applicable local zoning law or authorized by a special permit or variance. A like certification is required on the application from an official of the State Department of Public Works as to compliance, not only with applicable municipal ordinances or bylaws, but also with the provisions of G. L. c. 93D (which relates to control of outdoor advertising adjacent to the interstate and primary highway systems).[3]

---

[3] The text, so far as material, of 311 Code Mass. Regs. 3.03 (1979) is as follows:

*3.03: Initial Applications for Annual Permits and Applications for Temporary Permits.*

(1) Each initial application for an annual permit and each application for a temporary permit shall be made on a form furnished by the Division and shall be accompanied by the fee prescribed in

Reacting to a criticism made of the earlier version of 311 Code Mass. Regs. 3.03, that it failed to consider the possibili-

311 CMR 3.02. No application shall be deemed properly completed unless a scaled diagram is filed on forms supplied by the Division. The scaled diagram shall consist of a sketch of all natural and man-made features viewable from the principal highway upon which the sign is intended to face within 500 feet of the proposed location of the sign. The sketch shall be based on measurements taken along the public ways within 500 feet of the sign location. Upon request by the Executive Director or the Board additional information shall be filed on forms supplied by the Division and shall be deemed part of the application. No application shall be complete without the additional information filed pursuant to such request.

(2) Each application shall contain the following certification which must be signed by a duly authorized official of the city or town wherein the proposed sign is to be located:

"I hereby certify that the proposed sign is (check applicable box)

□   not in conformity with
□   in conformity with
□   authorized by a special permit or variance from the applicable Ordinances/By-Laws of the City/Town (strike one) of _____. The proposed location of the sign is in an area zoned _____."

---

Name and title of duly authorized          Date
  City/Town official

(3) Each application shall contain the following certification which must be signed by a duly authorized official of the Massachusetts Department of Public Works (MDPW):

"I hereby certify that the proposed sign is (check applicable box)
                                  violation citation:

□   not in conformity with
□   in conformity with
□   not subject to

the provisions of Chapter 93D of the General Laws. If subject to Chapter 93D, the subject sign is

□   not in conformity with applicable municipal ordinances or by-laws.
□   in conformity with applicable municipal ordinances or by-laws."

---

Name and title of duly authorized          Date
MDPW official

ty that a local building inspector might refuse to certify anything at all, sub-paragraph (4) permits the applicant to submit an affidavit stating that the applicant had made a timely effort to obtain certification. By the terms of the next sub-paragraph, (5), the executive director of the Board, or the Board itself, may, at discretion, disapprove an application without a hearing if an application contains a certification to the effect that the sign for which a permit is sought violates local law. It is this reservation of right by the Board to dispose of an application summarily without a hearing which the advertisers say bears the taint of illegality.

The provisions of 311 Code Mass. Reg. 3.06, relating to renewal and revocation of permits, are similar in design,[4]

---

(4) If the duly authorized official fails to complete the certification within 30 days, the application may be filed with an affidavit in place of the certification. The affidavit shall state that certification from the named municipal or MDPW official has been sought not less than 30 days prior to the filing of the application and that no unqualified certificate of non-conformity, conformity or non-applicability has been issued. The affidavit shall also describe the applicant's attempts to obtain the certification and the dates on which such attempts were made. The affidavit shall be deemed part of the application.

(5) The Executive Director or the Board may, at its discretion, disapprove an application for a permit without a hearing if a duly authorized municipal or MDPW official certifies that the proposed sign would not conform to applicable municipal ordinances or by-laws or the provisions of Chapter 93D of the General Laws, as the case may be.

[4] The text, so far as material, of 311 Code Mass. Regs. 3.06 is as follows:

*3.06: Renewal and Revocation of Permits.*

(1) Each application for the renewal of an annual permit shall be accompanied by the fee prescribed in 311 CMR 3.02. Upon request by the Executive Director or by the Board, a scaled diagram and any additional information shall be filed on forms supplied by the Division and shall be deemed part of the application. No application shall be complete without a scaled diagram and such additional information filed pursuant to the request. The scaled diagram shall consist of a sketch of all natural and man-made features viewable from the principal highway upon which the sign is intended to face within 500 feet of the location of the sign. The sketch shall be based upon measurements taken along the public ways within 500 feet of the sign location.

with the significant difference that (notwithstanding certification of noncompliance), a permit applicant may under

(2) Each application shall contain the following certification which must be signed by a duly authorized official of the city or town wherein the sign is located.

"I hereby certify that the subject sign is (check applicable box)

☐   not in conformity with
☐   in conformity with
☐   not subject to
☐   authorized by a special permit or variance from
☐   protected by specific provisions which "grandfathers" off-premises signs in

the applicable Ordinances/By-Laws of the City/Town (strike one) of: _____. The location of the sign is in an area zoned _____.

The subject sign is as of this date standing at the location stated in the application. _____ (yes or no)."

_____          _____
Name and title of duly authorized                      Date
   City/Town official

(3) Each application shall contain the following certification which must be signed by a duly authorized official of the Massachusetts Department of Public Works (MDPW)

"I hereby certify that the subject sign is: (check applicable box)

                                                          violation citation:

☐   not in conformity with
☐   in conformity with
☐   not subject to

the provisions of Chapter 93D of the General Laws. If subject to Chapter 93D, the subject is

☐   in conformity with applicable municipal ordinances or by-laws.
☐   not in conformity with applicable municipal ordinances or by-laws. It has been maintained in violation since _____ (date)."

_____          _____
Name and title of duly authorized                      Date
   MDPW official

(4) If the duly authorized official fails to complete the certification within 30 days, the application may be filed with an affidavit in

sub-paragraphs (9) through (11), inclusive, request a hearing if the request is accompanied by materials which sup-

place of the certification. The affidavit shall state that certification from the named municipal or MDPW official has been sought not less than 30 days prior to the filing of the application and that no unqualified certificate of non-conformity, conformity or non-applicability has been issued. The affidavit shall also describe the applicant's attempts to obtain the certification and the dates on which such attempts were made. The affidavit shall be deemed part of the application.

(5) The Executive Director or the Board may, at its discretion, disapprove an application for a permit without a hearing if a duly authorized municipal or MDPW official certifies that the proposed sign would not conform to applicable municipal ordinances or by-laws or the provisions of Chapter 93D of the General Laws, as the case may be.

. . . .

(8) If no hearing is requested as provided above, the preliminary determination of the Board or the Executive Director, shall be final.

(9) If the Executive Director or the Board has denied an application for a permit pursuant to 311 CMR 3.06(5), the permit applicant may request a hearing. Any such request shall be in writing and shall be filed within 15 days of notification of such denial. Such a request shall set forth in detail the specific reasons supporting the applicant's contention that a hearing should be conducted by the Board and shall include:

(a) An identification of the application and permit numbers and of the material issues of fact which the applicant contends are in dispute and require a hearing by the Board for resolution.

(b) A summary of the evidence which the applicant would offer at a hearing to support its factual allegations.

(c) A scaled diagram of the area in which the subject sign is located, made pursuant to 311 CMR 3.06(1).

(10) If an applicant's request for a hearing is based upon the contention that an erroneous determination was made that a sign does not conform with applicable municipal ordinances or by-laws, such request shall include, in addition to the information required above, the following:

(a) The name of the municipality in which the sign is located and the name and office of the official who made the allegedly erroneous determination.

(b) A description of the location of the sign, including the zoning district in which the sign is located.

(c) A certified copy of all provisions of the ordinance or by-law which the applicant contends authorizes the main-

port the contention that the certification of noncompliance was in error.

Whether a sign complies with local law is significant because under 311 Code Mass. Reg. 3.04(7) no permit "shall be granted or renewed for the location or maintenance of a [s]ign within a city or town except where such location or maintenance is in conformity with applicable city and town ordinances and by-laws . . . ." This deference by the Board to local regulation was approved in *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 361 Mass. 746, 751-753 (1972), and underscored in *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 211-215 (1975), in which the court decided that the Board might properly defer to a by-law of Brookline prohibiting outdoor advertising entirely in that town, except for signs announcing businesses conducted on the premises on which the outdoor display was located. If, therefore, no genuine dispute exists as to com-

---

tenance of the sign and a statement certified by city or town clerk of the effective date of such provisions.
(d) A statement of the reasons in support of the contention that the official's determination was erroneous.

(11) If an applicant's request for a hearing is based upon the contention that an erroneous determination was made that a sign does not conform with the provisions of Chapter 93D of the General Laws, such request shall include the following:

(a) The name of the municipality in which the sign is located.
(b) An identification of the principal highway such sign faces and of the interstate, federal-aid primary highway, or freeway primary highway from the main-traveled way of which the advertising or informative content is visible.
(c) A statement of the reasons in support of the contention that the certification was erroneous.

(12) Any request which fails to comply with the requirements of 311 CMR 3.06(9), (10) or (11) shall not be considered by the Board. The Board will not hold a hearing prior to determining a request filed pursuant to 311 CMR 3.06(9), (10) or (11). Upon application by an applicant or city or town made before a deadline, the Board at its discretion, may, without hearing, extend any deadline prescribed in this section.

pliance with local law,[5] a hearing before the Board is an exercise in futility (except to stave off the evil day of permit revocation, a stratagem we do not endorse as an end of the administrative process). The purpose of the Board's regulations 3.03 and 3.06 is to enable it to screen a permit application at the threshold for whether there is anything to be heard, or whether the application is doomed.

1. *Applications for license renewals.* Neither side to the controversy disputes that an applicant for a permit renewal is, as a matter of first principle, entitled to a hearing before his application is denied. General Laws c. 30A, § 13, expressly provides that "no agency shall revoke or refuse to renew any license unless it has first afforded the licensee an opportunity for a hearing . . . ."[6] What the Board's regulations establish is an administrative summary judgment procedure which enables the Board to determine whether there exist any material disputes concerning facts which would have the effect of conclusively requiring refusal of a permit application. For example, a town official certifies to the board that a sign for which a renewal permit is sought does not comply with local law. The applicant, in accordance with the Board's regulations 3.06(9), (10), and (11), requests a hearing and files the information required under those sub-paragraphs. This information discloses on its face that a sign of the size in issue is unconditionally forbidden in the zoning district in which it is located. On such facts an evidentiary hearing would serve no useful purpose since the Board under its regulation, supported by the authority of

---

[5] The local regulation may be in the form of a zoning ordinance or by-law, or a special by-law or ordinance adopted under Home Rule Amendment (art. 2, § 6, of the Amendments to the Constitution of the Commonwealth, as appearing in art. 89 of the Amendments, approved November 8, 1966). *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. at 210 n.8. *American Sign & Indicator Corp.* v. *Framingham, ante* 66, 69 (1980).

[6] See also G. L. c. 93, § 29A; *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 495-496 (1965); Sacks & Curran, Administrative Law, 1954 Ann. Survey Mass. Law 126, 127, 135-136; 2 Davis, Administrative Law § 12.1 (2d ed. 1979).

*John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 361 Mass. at 751-752, is bound to refuse a permit for such a sign.

Three decisions of the United States Supreme Court have considered and approved the device of summary decision, or threshold requirement, in administrative proceedings.

In *United States* v. *Storer Bdcst. Co.*, 351 U.S. 192 (1956), the Court held that the Federal Communications Commission (FCC) could, conformably with the right to a hearing granted by the Communications Act of 1934,[7] refuse a hearing to an applicant for a broadcast license who already held five such licenses. Observing that the FCC had by regulation limited to five the number of stations which any broadcaster might own, the Court concluded the Congress had not intended the FCC "to waste time on applications that do not state a valid basis for a hearing." *Id.* at 205.

In the second case, *FPC* v. *Texaco, Inc.*, 377 U.S. 33 (1964), the Court examined procedures of the Federal Power Commission (FPC), adopted under the Natural Gas Act (now at 15 U.S.C. §§ 717-717w [1976]) allowing for the summary rejection of contracts with price provisions which deviated from the agency's regulations, despite statutory requirements for a hearing in § 717f. "[T]he statutory requirement for a hearing," the Court said, "under [the Natural Gas Act] does not preclude the Commission from particularizing statutory standards through the rule-making process and barring at the threshold those who neither measure up to them nor show why in the public interest the rule should be waived." *Id.* at 39.

With some force, the advertisers call to attention that in *Storer* and *Texaco* the applicant itself was the source of the facts which demonstrated noncompliance with agency regulations, while the Board's procedure allows the baleful news of noncompliance to be furnished to the Board by a

---

[7]Now 47 U.S.C. § 301 et. seq. (1976). The provision relating to the right to a hearing is at § 309.

third, and possibly hostile, party, an official of the host municipality or of the Department of Public Works of the Commonwealth. This more resembles the process which was the subject of the last of the trilogy of Federal cases, *Weinberger* v. *Hynson, Westcott & Dunning, Inc.* 412 U.S. 609 (1973). There the Food and Drug Administration (FDA) limited by regulation[8] the right to a hearing on new drug applications to those which proffered substantial evidence of the drug's effectiveness. To assist it in reviewing the efficacy of drugs, the FDA enlisted the National Academy of Arts and Sciences — National Research Council (Council). The Council reported adversely on the efficacy of a drug called Lutrexin, for which Hynson, Westcott & Dunning, Inc. (Hynson), was trying to obtain clearance. That negative determination was based largely on the failure of Hynson to furnish evidence stemming from "adequate and well-controlled clinical investigations" as defined by FDA regulations at 21 C.F.R. § 130.12 (*a*)(5)(ii) (now found at 21 C.F.R. § 314.111[*a*][5] [1979]). The Court discerned and approved in the *Hynson* case an administrative procedure device which "will not provide a formal hearing where it is apparent at the threshold that the applicant has not tendered *any* evidence which *on its face* meets the statutory standards as particularized by the regulations" (emphasis original). *Id.* at 620.

"We cannot impute to Congress," the Court went on to say, "the design of requiring, nor does due process demand, a hearing when it appears conclusively from the applicant's 'pleadings' that the application cannot succeed." *Id.* at 621.

Similarly, in the State context before us, administrative summary judgment procedures do not transgress statutory or constitutional rights to a hearing where those procedures are such that they allow the agency to dispense with a hearing only when the papers or pleadings filed conclusively show on their face that the hearing can serve no useful pur-

---

[8] 21 C.F.R. §§ 130.12(*a*)(5) and 130.14, now designated as 21 C.F.R. §§ 314.111(*a*)(5) and 314.200 (1979).

pose, because a hearing could not affect the decision. *Hess & Clark, Div. of Rhodia, Inc.* v. *FDA*, 495 F.2d 975, 985 (D.C. Cir. 1974). Gellhorn & Robinson, Summary Judgment in Administrative Adjudication, 84 Harv.L.Rev. 612, 617 (1971).

Commentators on administrative law have urged the merits of an administrative summary judgment procedure of the sort devised by the Board. Gellhorn & Robinson, *supra*. Ames & McCracken, Framing Regulatory Standards to Avoid Formal Adjudication: The FDA as a Case Study, 64 Calif. L.Rev. 14, 16-17 (1976). 2 Davis, Administrative Law § 12.16, at 470-471 (2d ed. 1979). Contrast *Pactra Indus., Inc.* v. *Consumer Prod. Safety Commn.*, 555 F.2d 677, 684-685 (9th Cir. 1977). It is an irony of the history of administrative law that a system of adjudication designed to reach decision with a minimum expediture of time and resources has achieved a fabled degree of stagnation. See Friendly, A Look at The Federal Administrative Agencies, 60 Colum.L.Rev. 429, 432-435 (1960); Robinson, The Making of Administrative Policy: Another Look at Rulemaking and Adjudication and Administrative Procedure Reform, 118 Pa.L.Rev. 485, 516-517 (1970).

The Board's situation is a case in point. In an affidavit filed in this action, its executive director says that in 1976 the Board denied approximately 1,300 permit applications, most of them on the ground of noncompliance with local law. Many of those were denied for the fourth consecutive year on the same basis and awaited hearing. The Board was managing to hear approximately 300 applications of all kinds per year. On the basis of its staffing, it would take the Board about four to five years to hear only the cases involving denials based on noncompliance with local law. In these circumstances, a method of expediting proceedings consonant with fairness ought not to be lightly discarded in the name of an abstract right to hearing. Administrative feasibility may and should be taken into account, *Environmental Defense Fund* v. *EPA*, 598 F.2d 62, 85 (D.C. Cir. 1978), so long as there is no fundamental unfairness. See

*B.F. Goodrich Co.* v. *Director of Div. of Employment Security.*, 6 Mass. App. Ct. 784, 800-801 (1979).

Upon analysis, the obstacle which the Board has placed in the way of a hearing on renewal applications is well short of insurmountable. While under 311 Code Mass. Reg. 3.06(5) the Board may, in its discretion, "disapprove an application for a permit without a hearing if a duly authorized municipal or MDPW [Massachusetts Department of Public Works] official certifies that the proposed sign would not conform to applicable municipal ordinances or by-laws or the provisions of Chapter 93D," the applicant may, at that juncture, request a hearing. The applicant must support such a request with, among other things: (a) a scaled diagram of the area in which the sign is located; (b) a summary of evidence which the applicant would offer at a hearing to support its factual allegations; (c) a certified copy of the local ordinance or by-law which the applicant contends authorizes the sign; and (d) a statement of reasons in support of the contention that the official's determination was erroneous. Substantially identical provisions govern noncompliance certifications under G. L. c. 93D. See 311 Code Mass. Regs. 3.06(9), (10) and (11). In effect, the applicant is obliged to muster a creditable statement that local law or G. L. c. 93D, as the case may be, has in fact been complied with. If the application is incomplete so far as the requirements of sub-paragraphs (9), (10) and (11) are concerned, the renewal request may be denied without further proceedings. If it is complete, we read the Board's regulations as authorizing it to consider whether the application or "pleading" at that stage does in fact raise a substantial question that local law or G. L. c. 93D has been complied with, although 311 Code Mass. Regs. 306(12) is peculiarly opaque in this regard.[9] The parties so construe 3.06(12). In a manner analogous to

---

[9] That sub-paragraph provides in relevant part: "The Board will not hold a hearing prior to determining a request filed pursuant to 311 Code Mass. Regs. 3.06(9), (10) or (11)."

the function of a judge weighing affidavits and counter affidavits under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), the Board must appraise the impact of the materials filed under 3.06(9), (10) and (11), and decide if there is a genuine question about which to have a hearing.

The requirements for the written challenge which an applicant must make to a certification of noncompliance are stated with sufficient detail and precision in 311 Code Mass. Reg. 3.06(9), (10) and (11) to meet the standards of particularity required by the Court in *Weinberger* v. *Hynson, Westcott & Dunning, Inc.,* 412 U.S. at 621 n.17. None of the information required would be unknown or unobtainable to a person engaged in the outdoor advertising business. If a printed copy of a by-law or ordinance were not available, as is sometimes the case, a certificate of the town clerk or city clerk as to the text of the regulation would be. We are not impressed by the advertisers' argument that regulations 3.03(4) and 3.06(4) are unfathomable in so far as they call upon an applicant to describe in an affidavit "the applicant's attempts to obtain the certification and the dates on which such attempts were made." That requirement can be met by a statement of the occasions on which the applicant's request was made, whether orally or in writing, and to whom the request for certification was made. A copy of the request or requests attached to the affidavit would be desirable.

Nor are we persuaded by the advertisers' contention that by asking for certifications from local and State officials, the Board has impermissibly sought information on questions in which discretion or subjective judgment is a substantial component. See *Weinberger* v. *Hynson, Westcott & Dunning,* 412 U.S. at 621 n.17. Determinations of compliance with local land use law are commonly reposed in local officials (see e.g., G. L. c. 40A, § 7, inserted by St. 1975, c. 808, § 3) and this duty is not regarded as an act of discretion, as is evident from decisions which have identified a complaint in the nature of mandamus as one of the means by which to test the duty of a municipal officer to grant or

withhold a permit. *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 518-519 (1965). *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. 272, 277-278 (1972). *Tisei* v. *Building Inspector of Marlborough*, 5 Mass. App. Ct. 328, 330 n.3 (1977). *Morganelli* v. *Building Inspector of Canton*, 7 Mass. App. Ct. 475, 481-482 (1979). It is well understood that mandamus lies only against a public official performing nondiscretionary acts. *Channel Fish Co.* v. *Boston Fish Mkt. Corp.*, 359 Mass. 185, 188 (1971). It is no less within the capacity of a court to review the legal correctness of a denial by the Board founded on noncompliance with local law or G. L. c. 93D (based in turn on certifications of municipal or State officials) than it is to review the lawfulness of a building inspector's grant or refusal of a permit.

Our conclusion is that the Board's summary disposition procedures for permit renewals are structured in a fashion which does not offend the hearing requirements of G. L. c. 30A, § 13, because they deprive applicants only of meaningless hearings and, therefore, do not deprive them of meaningful ones. Holding, as we do, that the Board's summary disposition procedures satisfy the statutory hearing requirements, we do not need to reach the plaintiffs' arguments based on constitutional rights to a hearing. We do not think that rights of hearing rooted in constitutional considerations of due process of law, *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 495-496 (1965); 2 Davis, Administrative Law § 12.1 (2d ed. 1979), are, in some mystical manner, more absolute than those founded on statute so as to require a hearing which would be a charade. It is instructive to bear in mind that if Mass. R.Civ.P. 56 and its Federal counterpart satisfy due process in the context of judicial proceedings, where trial by jury would be involved, then surely an analogue in the context of administrative proceedings does so. Gellhorn & Robinson, Summary Judgment in Administrative Adjudication, 84 Harv.L.Rev. at 616-617. See *Weinberger* v. *Hynson, Westcott & Dunning, Inc.*, 412 U.S. at 622. Confrontation and cross-examination are not always part of the due proc-

ess right. *Lotto* v. *Commonwealth*, 369 Mass. 775, 780 (1976).

2. *Applications for original permits.* The statutory right to an administrative hearing so far discussed, which is contained in G. L. c. 30A, § 13, does not pertain to applications for original licenses; it is limited to revocations and renewals. While at first blush G. L. c. 93, § 29A, appears to speak only of a right to a hearing before the Board for a party who objects to the issuance of a permit (e.g., a town) or its revocation by the executive director of the Board, remaining anomalously silent about a party whose application is denied in the first instance, a closer reading points to the conclusion that the applicant who is wounded by a denial may, too, claim a hearing. The words, "Any applicant for a permit . . . aggrieved by a decision of the executive director with respect to the issuance . . . of a license or permit . . . may . . . appeal from such decision to the Board which may, after a public hearing held on due notice, order such decision to be affirmed, modified or annulled," must in context pertain to all determinations made "with respect to the issuance," including the decision not to issue the permit. Our duty is to read statutes in a common sense fashion so as to avoid anomaly and so as to yield an effectual and harmonious piece of legislation. *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Commn.*, 354 Mass. 408, 414 (1968). *Power* v. *Secretary of the Dept. of Community Affairs*, 7 Mass. App. Ct. 409, 413 (1979). The parties have, indeed, assumed that G. L. c. 93, § 29A, affords a hearing to a disappointed applicant, and we approved such a procedure in *Young's Court, Inc.* v. *Outdoor Advertising Bd.*, 4 Mass. App. Ct. 130, 131 (1976). It is, therefore, no more necessary on this branch of the case than it was on the first branch (renewals) to decide if an applicant for a permit to erect an outdoor advertising sign is entitled to a hearing as a matter of due process of law.[10]

---

[10] The license-privilege dichotomy, as expressed in cases such as *Burgess* v. *Mayor of Brockton*, 235 Mass. 95, 100 (1920), and *Clarke* v. *Board of*

As we have seen, under the Board's regulations governing initial permits (311 Code Mass. Regs. 3.03), a "not in conformity" certification by a local or State official carries greater weight than in the case of a renewal application because the Board may disapprove a permit application without a hearing, and the applicant receives no opportunity to file materials in the nature of a counter affidavit. Rather than having to cross a threshold, the applicant is now asked to scale a wall. The Board responds that the right to a hearing has not, as a practical matter, been denied because the applicant for a permit will need to apply for a building permit in any event and may appeal from an adverse determination by a municipal official to a board of appeal, thence to the Superior Court, and, in the case of an adverse determination under c. 93D, directly to the Superior Court.

We do not think this is an adequate answer. The local by-law may provide that a permit from the Board is a precondition to a local permit, thus creating a Catch-22 effect. If the local by-law is not a zoning by-law, but one which is limited to sign control, there may be no avenue to a board of appeal or de novo review before a court. The reasoning of cases such as *Nickey* v. *Mississippi*, 292 U.S. 393, 396 (1934), and *Bourjois, Inc.* v. *Chapman*, 301 U.S. 183, 189 (1937), which stand for the proposition that an agency may deny a hearing if the party can obtain judicial review, presupposes

---

*Collegiate Authy.*, 327 Mass. 279, 284 (1951), has become pretty well enervated and the better view is that "a party who has a sufficient interest . . . at stake in a determination of governmental action should be entitled" to meet at a hearing "unfavorable evidence of adjudicative facts." *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. at 496, quoting 1 Davis, Administrative Law § 7.02, at 412 (1958). Compare *Commonwealth* v. *Gordon*, 354 Mass. 722, 726 (1968). The fact that the State or a municipality could by statute, ordinance, or by-law or regulation prohibit outdoor signs altogether (see *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 160, 180, 183, 197, appeal dismissed, 296 U.S. 543 [1935]; *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. at 222-228) does not mean, however, that a person engaged in the sign business is not "as much entitled as everyone else to fair procedure before a death sentence is imposed upon his business." 1 Davis, *supra*, § 7.18, at 496.

the availability of de novo review. See 2 Davis, Administrative Law § 12:13, at 460 (2d ed. 1979). Moreover, it turns administrative law upside down to urge, as the Board in effect does, that considerations of administrative efficiency may remit applicants to procedures which will take longer and cost more. As Professor Davis has observed, "an interest worth only $2,000 may be at stake, whereas getting [judicial] review may cost the party $5,000 or more." *Id.* at 461. It would be surprising if the Board has not acquired useful experience in administering sign regulations, which ought to be available to applicants and communities at an early stage. We conclude, therefore, that the Board in initial permit cases must apply a threshold test, similar to that which it employs in renewal cases, which affords the applicant an opportunity to rebut an adverse certification from a municipal or State official.

A judgment is to enter declaring that the Board may apply its regulations set forth in 311 Code Mass. Regs. 3.06 (1979); the Board may not apply its regulation set forth in 311 Code Mass. Regs. 303(5)(1979), and shall grant a hearing to a person denied a permit upon an application under regulation 3.03, until the Board promulgates amended regulations for initial permits in a manner consistent with this opinion. The order granting preliminary injunctive relief is vacated.

*So ordered.*