COMMONWEALTH *vs.* FREDERICK R. MOREIRA. June 11, 1982. The defendant was indicted under G. L. c. 265, § 15A, for assault and battery by means of a dangerous weapon on a Somerville police officer and, after a jury trial, was convicted on so much of the indictment as charged assault and battery.

If believed, the evidence presented by the Commonwealth was suffi-
cient to warrant the jury in finding that the police had reason to stop the
defendant and his companions and inquire regarding their possession of a
handgun on a public street late at night, see *Terry* v. *Ohio*, 392 U.S. 1
(1968); *Commonwealth* v. *Anderson*, 366 Mass. 394, 397-400 (1974);
*Commonwealth* v. *McCauley*, 9 Mass. App. Ct. 780, 781-783 (1981);
*Commonwealth* v. *Crowley*, 13 Mass. App. Ct. 915 (1982), and that the
stop would have taken place outside of the defendant's home had the
defendant not pushed Officer Munroe through the front door into the
hallway, where he assaulted the officer with a wrench. On these find-
ings, the jury could properly have concluded that the officer's entry into
the defendant's home was not unlawful because it was involuntary, and
was, in fact, caused by the defendant. Had the jury so concluded, it
would have been warranted in finding that the defendant was guilty of
the crime because he had no right to use force to resist, or aid another in
resisting, the police investigation, so long as the officers did not use exces-
sive force. See and compare *Miller* v. *State*, 462 P.2d 421, 426-427
(Alaska 1969); *State* v. *Hatton*, 116 Ariz. 142, 147-148 (1977); *State* v.
*Richardson*, 95 Idaho 446, 449-451 (1973), cert. denied, 414 U.S. 1163
(1974); *State* v. *Mulvihill*, 57 N.J. 151, 155-158 (1970); *Columbus* v.
*Fraley*, 41 Ohio St. 2d 173, 178-180, cert. denied, 423 U.S. 872 (1975);
Model Penal Code § 3:04 (2)(a)(i) (1962); Annot., 44 A.L.R.3d 1078
(1972).

The defendant, however, presented evidence from which the jury
could have found that he had been with a group of youths at a street cor-
ner when his brother observed the police approaching; that he, his
brother and a friend wished to avoid contact with the police and immedi-
ately drove to the defendant's home a few blocks away; that the defendant
had no knowledge that the police wished to speak to him or his compan-
ions about their activities; that he was in the kitchen of his home when he
observed the cruiser stop outside; that he went to the door where his
friend handed him a bottle of vodka; that two officers ran up the steps on-
to the porch, did not state their purpose, pushed his brother aside, and be-
gan to force their way into the home despite the defendant's attempt to
shut the door; and that once inside, the officers began punching the de-
fendant, who attempted to defend himself. The defendant denied hitting
any officer with a wrench. There was no evidence that a handgun was
found inside the defendant's home, in his vehicle, or on the person of the
defendant or any of his companions. The defendant's evidence warranted
the conclusion that the police had forcibly entered his home without his
consent and without probable cause to arrest or search anyone therein,
and it entitled the defendant to an instruction which stated that he would
have been justified in resisting with reasonable force this unlawful police
intrusion into his dwelling. See *Commonwealth* v. *Crotty*, 10 Allen 403,
405 (1865), read in light of *Payton* v. *New York*, 445 U.S. 573 (1980);

*Commonwealth* v. *Forde,* 367 Mass. 798 (1975); *Commonwealth* v. *Huffman,* 385 Mass. 122 (1982). Contrast *Commonwealth* v. *DiSanto,* 8 Mass. App. Ct. 694, 699-703 (1979). See also *John Bad Elk* v. *United States,* 177 U.S. 529 (1900); Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L. J. 1128 (1969). Although the defendant's requests for instructions on the issue were a bit wide of the mark, they were sufficient in light of the lengthy lobby conference held on this aspect of the case to require the judge to give the substance of an instruction such as that suggested in the second preceding sentence. See and compare *Commonwealth* v. *Corcione,* 364 Mass. 611, 618 (1974); *Commonwealth* v. *White,* 5 Mass. App. Ct. 483, 487-488 (1977). The instructions actually given (over the defendant's objection) had the effect of usurping the jury's fact-finding function on the issue of the lawfulness of the police conduct and, therefore, served to deprive the defendant of a substantial ground of his justification defense.

The error requires a new trial which, by virtue of the jury's initial verdict, will be limited to the charge of assault and battery. At that trial, the judge should give serious consideration to exercising his discretion in favor of asking the jury venire the first special question requested by the defendant in his motion filed on March 18, 1981. We would expect that the assistant district attorney assigned to retry the case would studiously avoid making any remarks in closing argument similar to the ones which required curative instructions here. (We note that the counsel for the Commonwealth on this appeal is not the assistant district attorney who prosecuted the case below.) We need not discuss the issues raised with respect to the denial of the defendant's posttrial motion under Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979). Based on the findings that the jury could have made on the Commonwealth's evidence, as set out above, that motion was properly denied.

*Judgment reversed.*

*Verdict set aside.*

*Judith M. Freedman* for the defendant.
*Robert L. Rossi,* Assistant District Attorney, for the Commonwealth.