DelVecchio, J.
This is an action for damages brought by members of the Greene family under the Massachusetts Lead Paint Act (the “Act”), G.L.c. Ill, §§190-199. The original complaint asserts that defendant Joseph L. Marini (“Marini”) “was for periods of time relevant to this action the owner” of the building in which the Greenes rented an apartment. On November 24, 1993, Marini filed a motion for summary judgment on the grounds that he was never an owner of the building, and submitted documents to that effect. That motion was unopposed, but has not yet been acted on by the Court. On February 8, 1994, plaintiffs filed a Motion to Amend the Complaint, seeking to change the word “owner,” as it referred to Marini, to “manager.” Marini opposes this motion on the grounds that it would be futile, and urges the Court to act on his motion for summary judgment whether or not the Motion to Amend is allowed.
A motion to amend is futile and should be denied where the proposed amended complaint fails to state a claim upon which relief can be granted. Jessie v. Boynton, 372 Mass. 293 (1977); Robinson v. Commonwealth, 32 Mass.App.Ct. 6, 10-11 (1992), rev. denied, 412 Mass. 1101. In this case, the amendment would be futile if, as a matter of law, no liability attaches to a “manager” for purposes of the Lead Paint Act.[1] The court holds that managers cannot be held liable for violations of the Act, and the motion to amend the Complaint must be denied.
“The familiar rule of statutory construction requires (the Court] to interpret a law so as to effectuate the intent of the Legislature in enacting it.” International Org. of Masters, Mates and Pilots, Atlantic and Gulf Maritime Region, AFL-CIO v. Woods Hole, Martha’s Vineyard and Nantucket Steamship Auth., 392 Mass. 811, 813 (1984), citing Hanlon v. Rollins, 286 Mass. 444, 447 (1934). The Court’s duty “is to read statutes in a common sense fashion so as to avoid anomaly and so as to yield an effectual and harmonious piece of legislation.” Massachusetts Outdoor Advertising Council v. Outdoor Advertising Bd., 9 Mass.App.Ct. 775, 790 (1980). The Court “should not make a construction which may produce an unworkable scheme or one which allows for frustration of function.” Paquin v. Board of Appeals of Barnstable, 27 Mass.App.Ct. 577, 580 (1989).[2] The Lead Paint Act is a comprehensive statute whose goal is to eliminate lead paint poisoning within the Commonwealth. To that end, it provides for the establishment of lead poisoning control programs, diagnostic programs, building inspection and detection programs, and educational and publicity programs. In addition, it imposes duties on certain private parties, violations of which may result in civil and/or criminal liability. Throughout the statute, the “owner” of residential premises that contain elevated lead levels plays a prominent role.
The inspection provision of the Act requires that a “dangerous level of lead found in a dwelling inspected pursuant to this section . . . shall be reported immediately to the owner of the building . . .” G.L.c. Ill, §194 (emphasis supplied). Section 197 imposes a duty on “the owner” to remove lead-containing materials, and extends the duty to any “new owner” if “such premises undergoes a change of ownership and as a result thereof a child or children under six years of age shall reside therein.” G.L.c. Ill, §§197(a) and (f). Under section 197A, prospective buyers (i.e., potential owners) must be notified of the hazards of lead paint, and the seller (or current owner) must follow certain procedures. Section 199 expressly subjects to civil liability those owners who fail to fulfill their duties under the Act, and additionally, authorizes the recovery of punitive damages where the owner had pre *411 viously been notified of the condition under the provisions of section 194.
It is clear that the Legislature intended to create a cohesive framework in which ownership is the crucial trigger for both notification and responsibility. Owners, not managers, are given notice of elevated lead levels; change in ownership is the event that may create a new duty; and it is at the time of purchase and sale that notice is given to prospective owners. While one intention of the Act may have been to create a broad-based remedy for all those injured by lead paint, the legislature chose the best means of achieving that end, and it is not for the courts to alter the meaning of words so that the statute no longer works as a cohesive whole. To subject a manager to liability without first providing for a manager’s inclusion in the other provisions of the Act, e.g., the notice provisions, would be contrary to the carefully designed legislative scheme. The statute’s references to the State Sanitary Code do not compel the conclusion that the Legislature intended to adopt the definition of owner from that Code.
As to Marini’s Motion for Summary Judgment, for the same reasons discussed above, the motion must be allowed as to Count I of the Complaint. Because it is unopposed as to the other two counts, the motion must also be allowed as to Counts II and III of the Complaint.
ORDER
For the foregoing reasons, the plaintiffs’ Motion to Amend the Complaint is hereby DENIED, and the defendant Joseph L. Marini’s Motion for Summary Judgment is hereby ALLOWED.

 While the Complaint’s three counts all rely on Marini’s status as owner or lessor, the plaintiffs here only discuss liability under Count I, the Lead Paint Act, and seem to concede that Marini is not liable under the other two counts, whether the Complaint is amended or not.

 Although the meaning of the word “owner” does not seem ambiguous, the plaintiffs’ reference to the State Building Code’s definition of “owner” is at least enough to render the definition ambiguous, since it shows that the word can be used to include non-owners under certain circumstances.